THURNER HEAT TREATING COMPANY and others, Respondents, vs. MEMCO, INC., Appellant.

*November 19—December 23, 1947.*

For the appellant there was a brief by *Affeldt & Lichtsinn,* attorneys, and *Eldred Dede* of counsel, and oral argument by *Robert G. Kroncke,* all of Milwaukee.

For the respondents there was a brief by *Jack G. Kinn,* attorney, and *Kurt Schnellbaecher* and *William E. Burke* of counsel, all of Milwaukee, and oral argument by *Mr. Burke* and *Mr. Kinn.*

FAIRCHILD, J.   Neither on the appeal to the circuit court nor on this appeal has issue been taken with the trial court's finding that the gears in question were defective by reason of the respondents' neglect and failure to treat them according to specifications.   The appeal is concerned only with the extent of respondents' liability for their negligence.   Each of the lower courts found that the respondents were liable only for the cost of heat-treating the defective gears, but each based its conclusion on a different theory, and both of those theories are attacked by the appellant.   It is contended that no trade usage limiting liability was proved and that the parties at no time contracted that the respondents' liability should be a limited one.

Neither of these issues was raised by the pleadings, but the evidence upon which the lower courts reached their conclusions is in the record and is to be considered in determining whether

either or both of those conclusions are supported by the evidence.

The chief evidence on the matter of limited liability was the printed matter at the bottom of the invoices sent by respondents to their customers. One of the respondents and a Mr. Graham, who was called as a heat-treating expert, both testified that the information printed on the invoices was printed by fifty-one concerns which were members of a Metal Treating Institute. Mr. Graham, however, estimated that there were about one hundred recognized heat treaters in business in the United States. This is the extent of the testimony which bears on the question of a trade custom, and we hold that it is not sufficient to prove the existence of a custom or usage.

In *Power v. Kane* (1856), 5 Wis. 265, 268, it was said:

"It is not denied that usage may enter into and become a part of the law of trade, or that the law is to be applied to the transactions of parties, contracting and doing business in view of, and in reference to such usage. But it is not readily adopted by courts, and the proof of such usage must be clear and explicit, and the usage so well established, uniform, and so notorious that the parties must be presumed to know it, and to have contracted in reference to it."

In another early case, *Lamb v. Klaus* (1872), 30 Wis. 94, 97, it was said:

"It [the usage] must appear to be so well settled, so uniformly acted upon, and of so long a continuance, as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference to it and in conformity with it."

The rule as set forth in these early cases still prevails. *Farmer v. Pick Mfg. Co.* (1938) 227 Wis. 99, 102, 277 N. W. 668; *Lemke v. Hage* (1910), 142 Wis. 178, 181, 125 N. W. 440. In the case at bar the evidence does not show a custom well settled and uniformly acted upon. The proof upon that point is not positive and clear as the rule requires.

We do not agree with the circuit court in its holding that the provision limiting respondents' liability, which appeared on the. invoices, was a part of the contract. It is true that the record shows that the defendant had submitted orders to the respondents on numerous occasions prior to the transaction involved. here. Presumably when each of those prior orders was .delivered a delivery slip or an invoice was sent by respondents to the appellant, each including the printed notation that appeared on the invoices here. The notation appeared only on papers that were sent by respondents to its customers after the work ordered had been completed. There was no evidence to show that respondents notified their customers of that limited liability before accepting the order. No attempt was made to call the provision to appellant's attention, and it appears that appellant in fact had not seen the statement printed on the invoices. The appellant was justified in relying on the terms of the original contract in the absence of a direct statement by respondents to the contrary. The notation was a nullity so far as affecting the rights of appellant. Fair dealing and the general rules controlling contracts as to the intent of the parties prevent one from seeking to escape liability and from having so great an advantage as the respondents claim by the use of so little effort after a relation or contract was once established.

A New Jersey case very similar to the instant case has been called to our attention. It is *Dale v. See* (1889),. 51 N. J. Law, 378, 380, 382, 18 Atl. 306, 14 Am.; St. Rep. 688, 5 L. R. A. 583. That case involves defective workmanship by the defendant on silk delivered to him to be dyed. The defense was that the delivery of the dyed silk to the plaintiff was accompanied by a bill with the printed notation, "all claims for deficiency or damage must be made .within three days from date,.otherwise not allowed." · It appears that there, as here, · the plaintiff had received bills with similar notations. in. previous transactions with the defendant. In that case the court said:

"Upon a bailment of goods for work and labor upon them, the contract between the parties arises immediately upon the delivery of the goods to the bailee, and upon the completion of the work for which the bailment was made it is the duty of the bailee to return the goods to the owner. He cannot prescribe the conditions under which he will perform that duty. Notice by the bailee, with the return of the goods, or with his bill for the work done, qualifying his liability for defective workmanship, are terms of his own dictation. . . .

"From what has already been said it is apparent that no one of these notices of itself constituted a contract with respect to the work to which the bill on which it was printed was applicable. When the first bill was sent to the plaintiff the notice on it was a nullity. So with the second, and so with each of the bills in the series. . . . Each of these notices being in itself a nullity, it is inconceivable how, upon any legal principle, the frequency with which they were repeated could create out of them a contract on the part of the plaintiff without a scintilla of evidence of assent to the terms expressed in them."

This is in line with the general rule expressed in 6 Am. Jur., Bailments, p. 274, sec. 178, as follows:

". . . the general rule supported by the modern authorities appears to be that the bailor, unless his attention is called to the fact that such conditions are intended as a part of the contract, is not charged with notice, where he has no actual knowledge, of provisions limiting liability which appear upon something not apparently related to the contract itself, or given to the bailor ostensibly for some other purpose. There is authority which justifies the rule on the ground, among others, that the bailee, if he wishes to qualify his contract, should do so in an unmistakable manner, and it is not reasonably to be expected, nor is the bailor required to anticipate, that important terms of a contract will be found upon what is accepted merely as a means of identification or for some other purpose which to a reasonable man would not appear to be germane to the agreement itself."

If the respondents intended the notation on their invoices to be a part of their contract, they should have communicated that

information in a clear way to the appellant before accepting its order. As it was, the order was sent with specifications as to how the work was to be done. That order was filled and only upon delivery of the goods was any attempt made to limit liability and then only by small printing at the bottom of a paper used primarily to convey other information, such as the quantity, price, and shipping date of the goods. It is the policy of the law not only to encourage the embodiment of specific and material provisions in a contract, but in the interest of certainty and fair dealing, to require a plain and fair statement of terms. The notation on the invoices purportedly limiting liability is not such a plain and fair statement of terms and cannot be held to have become a part of the contract between the parties.

However, that does not mean that the appellant's measure of damages for respondents' negligent work is necessarily and automatically the $2,337 which appellant would have received on its contract with the Michigan firm. Appellant is entitled to what will reasonably compensate it for the damages resulting from respondents' failure to properly perform their contract. In *Stamford Extract Mfg. Co. v. Oakes Mfg. Co.* (2d Cir. 1925) 9 Fed. (2d) 301, 303, Judge LEARNED HAND wrote:

"We agree that mere notice of the extent of the promisee's loss is not conclusive; the loss must be within the promisor's undertaking. That is no doubt a fictitious standard to apply, for a contract is not a promise to perform or pay damages. Yet we know of no test other than the loose one that the loss must be such that, had the promisor been originally faced with its possibility, he would have assented to its inclusion in what he must make good."

This was a restatement of the rule expressed by Justice HOLMES in *Globe Refining Co. v. Landa Cotton Oil Co.* (1903) 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171. A recent Wisconsin case refers to this general rule in these words:

"However, the amount of damages which respondent is entitled to is limited by the rule that only such damages are recoverable as are the natural and probable consequence of the breach of warranty. Those damages include direct damages and such as the parties contemplate would be likely to result from a breach thereof when the contract was made. . . . While most courts recognize the right of a buyer to consequential damages, the general holding is that the liability is only for such damages as are natural and probable consequences of the breach and such as were within the contemplation of the parties." *Jones v. Pittsburgh Plate Glass Co.* (1945) 246 Wis. 462, 466, 17 N. W. (2d) 562.

Applying the rule in the *Stamford Extract Mfg. Case, supra,* the court held that one who promised to deliver lumber to a vessel and did not do so at the time appointed was properly liable for demurrage. The court said: "It seems to us quite unreasonable to suppose that a seller . . . could have refused to recognize, under these circumstances, that he was chargeable with so direct a loss as this."

In the case of *Hooks Smelting Co. v. Planters' Compress Co.* (1904) 72 Ark. 275, 283, 79 S. W. 1052, the plaintiff sought to recover $520.87 as the price of castings made for the defendant, who entered a counterclaim for $7,322.50, alleging improper workmanship on the plaintiff's part. The $7,322.50 sought by the defendant in that case included remote special damages. Losses incurred because defendant's plant was shut down awaiting the delivery of proper castings were demanded. The court held that the damages of $5,450 allowed by the trial court to the defendant were excessive. A persuasive factor in that determination was expressed by the court this way:

". . . the profits which the plaintiff might reasonably have expected to make on this contract did not probably exceed one or two hundred dollars. . . . And yet for the failure to properly perform this contract plaintiff is subjected to dam-

ages nearly ten times greater than the gross amount to be paid it for all the materials it furnished."

In respect to the difference between what respondents were to receive for their work and the damages claimed by the appellant, the case at bar is similar to the Arkansas case just referred to. In the instant case, appellant seeks $2,337 in damages for a job which would have earned respondent $147.60 if properly done. While this discrepancy in itself does not justify a holding that $2,337 would necessarily be excessive damages, it is some evidence that the respondents would not have agreed to do the work if such damages were contemplated.

No such extensive special damages are sought by appellant in this case as were sought in the Arkansas *Hooks Smelting Co. Case, supra,* and it may be possible for appellant to show some special damage of the sort which ought reasonably to have been contemplated and taken into consideration by the respondents in the making of the contract. The law imposes upon a party injured by another's breach of contract the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible.

It cannot be said that respondents contracted that their liability was to be limited to the cost of their work, for the provision to that effect on the invoices was not a part of the contract. Neither can it be said that the appellant shows that its contract price agreed upon with its customer for the completed gears is the just compensation to it for the damage done in view of the general rule that it is entitled to such damages as the parties at the time the contract was made ought reasonably to have contemplated would be likely to result from a breach. There should have been some showing of what would be a fair charge for the material furnished by appellant and its labor in producing the gears submitted to the respondents. The evidence necessary for a just application of the general rule of damages to the facts of this case is not in the record.

We therefore remand the case for further proceedings on that issue.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings in accordance with this opinion.

Fowler, J., took no part.