O'BRIEN, Respondent, v. ISAACS, d/b/a ISAACS SERVICE
STATION, Appellant.

*June 6—June 29, 1962.*

262

For the appellant there was a brief and oral argument by *Thomas P. Maroney* and *Ward Dunphy,* both of Milwaukee.

For the respondent there was a brief and oral argument by *Clarence J. O'Brien* of South Milwaukee, *in pro. per.*

WILKIE, J. 1. *Defendant's right to retain possession of plaintiff's automobile.* Defendant contends that he had a lien on plaintiff's car and therefore had the right to retain possession until plaintiff paid him the amount due as a parking fee (namely the $1 charge for overparking). This argument presupposes that plaintiff owed defendant the dollar.

The relationship between the parties was that of bailor-bailee. Where a parking attendant is present at the lot to collect fees, moving the cars about when keys are left upon request, and tickets are issued as a means of identifying the cars upon redelivery, courts generally hold that a bailment has been established. Anno. 131 A. L. R. 1175. In *Sandler v. Commonwealth Station Co.* (1940), 307 Mass. 470, 471, 30 N. E. (2d) 389, 131 A. L. R. 1170, the Massachusetts supreme judicial court held:

"The transaction of the parties was not merely the letting of a space where the plaintiff might leave his automobile. Upon the payment of the required charge, the defendant, through its agent, took possession of the automobile and, by reason of the requirement that the keys be left therein, the defendant could move the automobile to such part or parts of the public-parking station as might from time to time suit

the convenience of the defendant in the conduct of its business. On these facts relating to the character of the transaction between the parties a finding was warranted that the defendant was a bailee for hire."

Defendant apparently attempted to modify this legal relationship by the before-quoted stipulation printed on the parking-lot ticket. However, courts almost uniformly hold that such provisions contained on parking-identification tickets are not binding on the bailor unless actually read by him, or pointed out to him in some other fashion.

"Whether or not such provisions become a part of the contract is ordinarily determined upon the principle that one party can insist only upon such terms as are so set forth and so related to the writing and subject matter of the contract as fairly to manifest to the other party an intent that they are to be obligatory upon him; fair dealing to him, upon the assumption that he will act with reasonable caution, must be the test, and largely each case must stand by itself. In accordance with the foregoing principle, the general rule supported by the modern authorities appears to be that the bailor, unless his attention is called to the fact that such conditions are intended as a part of the contract, is not charged with notice, where he has no actual knowledge, of provisions limiting liability which appear upon something not apparently related to the contract itself, or given to the bailor ostensibly for some other purpose. There is authority which justifies the rule on ground, among others, that the bailee, if he wishes to qualify his contract, should do so in an unmistakable manner, and it is not reasonably to be expected, nor is the bailor required to anticipate, that important terms of a contract will be found upon what is accepted merely as a means of identification or for some other purpose which to a reasonable man would not appear to be germane to the agreement itself." 6 Am. Jur. (rev. ed.), Bailments, p. 296, sec. 178.

As a bailee, defendant would have no common-law lien. In general, a bailee acquires a lien only where he has in-

creased the value of the thing bailed, or is engaged in a public calling wherein he is required by law to accept the bailed chattel. See discussion, 6 Am. Jur. (rev. ed.), Bailments, p. 379, sec. 274. However, defendant would have a lien under sec. 289.43 (3), Stats., for any legally owing and unpaid parking fee. That statute provides in part:

". . . every person . . . keeping any . . . automobiles, . . . shall have a lien thereon and may retain the possession thereof for the amount due him for the keep, . . . thereof until paid."

However, for defendant to have been eligible to receive the benefits of the lien, he must first establish that plaintiff owed him an amount for parking the automobile. The bailment contract implicitly was for defendant to furnish plaintiff with an evening's parking for 50 cents. Midnight was not an unreasonable hour for plaintiff to call for the car, in view of that implicit agreement. The bailment was continued after midnight through no fault of plaintiff, but rather through the neglect of defendant. Plaintiff not only was willing to retrieve his car after that hour, but was irate that he was unable to do so. Under these circumstances, defendant had no right to additional compensation, and no lien to secure the payment of such compensation.

2. *Mitigation of damages.* Defendant next contends that even though he may have had no lien rights on plaintiff's car, plaintiff should have mitigated damages by paying defendant the dollar demanded. That a plaintiff must do all that is reasonable to minimize damages after a tort or breach of contract has occurred is well established. *Thurner Heat Treating Co. v. Memco, Inc.* (1947), 252 Wis. 16, 30 N. W. (2d) 228 (contract); *Callova v. Mutual Service Casualty Ins. Co.* (1959), 8 Wis. (2d) 535, 99 N. W. (2d) 740 (tort). *W. B. Moses & Sons v. Lockwood* (1924), 54 App.

D. C. 115, 295 Fed. 936, 33 A. L. R. 1467, is an analogous case. In that case defendant wrongfully attached plaintiff's automobile. The court held that plaintiff had the duty, if able, to reduce damages by giving a bond to secure the return of the car. Plaintiff was allowed to recover in damages only the value of the use of the car during the time necessary to secure its return. In this sense of mitigation, plaintiff did minimize damages. He not only attempted to secure the return of the car by calling Mr. Witte of the city building department, but he resorted to legal process on the first following business day.

Defendant does not contend that $41 is an unreasonable amount for plaintiff's time loss, and for the value of the use of the car over the weekend. Defendant's contention, in essence, is that plaintiff should have paid him a dollar to prevent him from committing a tort. Although the great mass of mankind may have chosen to pursue this course in retrieving the automobile, we cannot say that the law so requires. To so hold would be to require submission to demands which in some instances might be extortionary.

*By the Court.*—Judgment affirmed.