**ERVING PAPER MILLS, a Massachusetts Corporation, Plaintiff,**

v.

**HUDSON–SHARP MACHINE CO., a Wisconsin Corporation, Defendant.**

**No. 59–C–18.**

United States District Court
E. D. Wisconsin.

April 20, 1967.

Order May 18, 1967.

On Motion for Allowance of Costs
June 20, 1967.

E. L. Everson, of Everson, Whitney, O'Melia, Everson & Brehm, Green Bay, Wis., for plaintiff.

Maxwell H. Herriott, of Quarles, Herriott, Clemons, Teschner & Noelke, Milwaukee, Wis., for defendant.

### DECISION

GRUBB, Senior District Judge.

This is an action for breach of contract by failure to deliver certain wrapping machinery, hereinafter called the "Campbell Wrappers," purchased by plaintiff from defendant. The history of the case and the facts underlying the determination of liability are reported in Erving Paper Mills v. Hudson-Sharp Machine Co., 223 F.Supp. 913 (E.D.Wis. 1963), rev'd. 332 F.2d 674 (7th Cir. 1964) cert. denied 379 U.S. 946, 85 S.Ct. 440, 13 L.Ed.2d 544. The question of damages, severed from the issue of liability on stipulation of the parties, was referred to a Special Master. The case is now before the court on the objections of both parties to the Master's findings of fact and conclusions of law.

Defendant, Hudson-Sharp Machine Company, hereinafter referred to as "Hudson-Sharp," objects to allowance of damages based on the finding that plaintiff entered into the agreement on the inducement of Hudson-Sharp's oral representation that use of the Campbell Wrappers would result in a labor saving of three employees over plaintiff's corresponding napkin handwrapping operations, and further, to computation of damages based on the assumption that Hudson-Sharp is liable for damages for failure to deliver two rather than one machine.

Plaintiff, Erving Paper Mills, hereinafter calling "Erving," objects to the reduction of the amount of recovery based on the finding that it failed to meet its duty of mitigation, and to disallowance of damages predicated on the theory of savings that Erving contends would have resulted from increased efficiency in production by use of the Campbell Wrappers. Additionally, Erving objects to the failure to include allowance of interest from the date of the determination of liability to date of entry of final judgment in the case.

*Basis of Recovery Allowed by Master*

The record before the Master shows that in the discussions between the parties leading to the execution of the contract reference was made to labor savings that would be realized by use of the Campbell Wrappers. The then current process at Erving required eight employees to service the napkin folding machinery and the manual wrapping operations. A representative of Hudson-Sharp who was familiar with the operations at Erving made the representation that the entire process could be accomplished with three employees operating the two folding machines and one Campbell Wrapper if the latter were substituted for the manual wrapping operations. After some modification of the Campbell Wrapper, it was understood that one more girl, for a total of four employees, would be required. Sometime after Hudson-Sharp breached the agreement, Erving instituted an improvement in its manual operations which reduced the number of employees required therefor to a total of seven. Although installation of the Campbell Wrappers would have required some machinery maintenance service, Erving could have furnished this by more efficient utilization of other already available personnel.

In light of this evidence, the finding of the Master that Erving was induced to enter into the agreement on Hudson-Sharp's representation that use of the Campbell Wrappers would result in

a labor saving of three employees per wrapping machine has a basis in credible evidence and is, therefore, not clearly erroneous. The finding furnishes a reasonable basis for the computation of damages resulting from the breach. It is hereby affirmed.

■ There is some ambiguity in the contract as to the number of napkin wrapping machines purchased by Erving. The document refers to a date certain for delivery of one machine and indicates that delivery of the second machine is to be postponed until the former is in satisfactory operation at Erving and until a decision is reached as to the product to be packaged thereby. It is evident from the provisions of the written contract as well as from other contemporary discussions between the parties that Erving and Hudson-Sharp understood that the second Campbell Wrapper also would be utilized for processing of paper napkins. There is no uncertainty as to the obligation undertaken by Hudson-Sharp to manufacture and deliver to Erving two Campbell Wrappers. Its failure to deliver the first made impossible the fulfillment of conditions necessary for delivery of the second. Under these circumstances the determination that liability is to be predicated on failure to deliver two machines rests on a reasonable construction of the contract of the parties and, further, is consistent with the previous determination of liability in the case which Hudson-Sharp did not challenge in this respect. The finding is affirmed.

*Mitigation of Damages*

The Master recognized that Erving acted in compliance with its duty to mitigate damages by ordering two wrapping machines of the same capacities as the Campbell Wrappers from the Ouillette Company after notice of Hudson-Sharp's default. Actual delivery of the Ouillette machines was made approximately ten months after the date of promised delivery. The Master found that Erving, by waiver of Ouillette's late delivery failed to that extent in its obligation to mitigate and accordingly reduced the damage period by disallowance of losses for the ten months period of delay. He further suggested certain steps Erving, in his opinion, should have taken to fulfill its obligation of minimizing the loss. To quote his finding:

"The record does not disclose that the plaintiff made any threats of legal action to Ouillette because of the breach of delivery promises of the 'mitigating' contract. There is no evidence that the plaintiff put *any* kind of pressure on Ouillette with reference to keeping the delivery date, either before or after said date. Neither did the plaintiff file the statutory notice pre-requisite to recovery of damages for late delivery."

The import of this suggested course of conduct would impose on Erving the duty to litigate its claim against Ouillette, or at least take steps to preserve any cause of action it might have had based on delayed delivery.

■■ An injured party has an obligation of using all ordinary care and making all reasonable exertions to render the loss as light as possible. Thurner Heat Treating Company v. Memco, Inc., 252 Wis. 16, 26, 30 N.W.2d 228 (1947); O'Brien v. Isaacs, 17 Wis.2d 261, 266, 267, 116 N.W.2d 246 (1962). The weight of authority places the burden on the wrongdoer to show that the acts undertaken by the injured party in mitigation of its damages fall short of constituting ordinary and reasonable efforts to minimize the loss. See for example, Maurer v. United States, 219 F.Supp. 253, 256 (E.D.Wis.1963), where it was held that, under Iowa law, the injured party is not required to make what might have been a useless gesture. Wisconsin apparently is in accord. See Schmidt v. Schabow, 265 Wis. 154, 160, 60 N.W.2d 735, 38 A.L.R.2d 1449 (1953) and Kennedy-Ingalls Corporation v. Feissner, 11 Wis. 2d 371, 387, 105 N.W.2d 748 (1960) to the effect that a defendant must plead and show failure to mitigate. And, it has been held that the injured party is not an accounting trustee for the wrongdoer. Tampa Electric Company v. Nash-

ville Coal Company, 214 F.Supp. 647, 652 (M.D.Tenn.1963).

The record before the Master is devoid of any evidence that would indicate that the course of action suggested by the Master would have hastened delivery of the Ouillette machines, or that preservation of a cause of action or instituting suit against Ouillette would have been attended by a reasonable expectation of successful recovery. Further, there is no evidence whatsoever that any recovery against Ouillette, offset by the expense of litigation, would equal Erving's losses during the ten months period of delay.

Little authority deals with the question of necessity of litigation or other legal action as part of the duty to mitigate. A few decisions hold that such a step was not indicated under the circumstances of the case. For example, in Wolters Village Management Company v. Merchants and Planters National Bank of Sherman, 223 F.2d 793, 800, 801 (5th Cir. 1955), the injured party was not held to have acted unreasonably where it failed to notify the wrongdoer that he was acting in breach of an agreement which would have reduced the loss. Also, in T. C. Bateson Construction Company v. United States, 319 F.2d 135, 160, 162 Ct. Cl. 145 (1963), the injured party was not required to resort to seeking an injunction against a secondary boycott where it was uncertain whether or not this would have been successful or would have shortened a delay. The situation in O'Brien v. Isaacs, 17 Wis.2d 261, 116 N.W.2d 246, supra, is not analogous to the facts of the instant case. There, defendant, a parking lot manager, wrongfully detained plaintiff's automobile for non-payment of additional parking fees. The court held that plaintiff was not required to tender the demanded fee, and that he minimized damages sufficiently by attempting to secure the return of the car, including resort to legal process on the first following business day.

Although the Master made no ruling on the question of the burden of showing the reasonableness of the mitigating conduct, a colloquy on the hearing suggests that he looked to Erving to furnish this proof, contrary to accepted rule. In view of the absence of any evidence of record as to the probable success of any additional steps in mitigation required by the Master, the finding limiting the damage period by exclusion of the ten months period of delay in delivery of the Ouillette machines is erroneous in law and in fact.

The Master's findings and conclusions are hereby modified to allowance of damages for the period commencing with the date of the breach by failure to deliver the first of the Campbell Wrappers, or November 1, 1956, and terminating with the date of delivery of the first Ouillette machine on January 9, 1959.

*Disallowance of Damages Based on Theory of Increase in Production Efficiency*

Erving claims that it is entitled to recovery of cost savings that it contends would have resulted from an increase in production efficiency over handwrapping and Ouillette machine operations by use of the Campbell Wrappers, measured by the output of the folding machines that fed the napkins to the wrapping phase of the process. It is established that handwrapping operations resulted in an output of 70,000 napkins per hour. Erving contends that use of the Campbell Wrappers would have increased this to 90,000 per hour. The folding and wrapping machinery capacities would have permitted this increased production.

The Master rejected this claim on two grounds: (1) this recovery was barred by the provision of an express warranty of running rate of the Campbell Wrappers; and (2) damages of this nature were not within the contemplation of the parties.

The court is of the opinion that the first ground is not tenable since the provision of a guarantee of performance would not necessarily provide the entire measure of damages where suit is based on failure to deliver the machine rather than on breach of the warranty. See Thurner Heat Treating Company v.

Memco, Inc., 252 Wis. 16, 25, 30 N.W.2d 228 (1947); Jones v. Pittsburgh Plate Glass Company, 246 Wis. 462, 466, 17 N.W.2d 562 (1945); and Lommen v. Danaher, 165 Wis. 15, 19, 161 N.W. 14 (1917). However, the facts underlying this determination have relevancy to the question whether or not the claimed damages may reasonably be deemed to have been within the contemplation of the parties.

■ While increased production output may have been possible in light of the capacity of the machinery, the actual output is subject to a number of limiting factors, such as the number and skill of the employees assigned to the operations, allowance of downtime and rejects of the folding and wrapping machinery, as well as possible further engineering modifications of the novel and untried wrapping machinery. It was within the exclusive control of Erving whether it would choose increased production output with higher labor costs or less efficiency in output with attendant labor savings. Since the emphasis in the precontract discussions was on labor savings to be realized by use of the machines, it is not unreasonable to conclude that Hudson-Sharp did not anticipate, and should not be deemed to have contemplated that it would have to answer in damages for production losses in addition to losses in labor savings. For this reason, as well as for the reasons relied on by the Master, disallowance of damages based on a theory of production increases is hereby affirmed.

Furthermore, review of the entire record before the Master discloses the uncertainty of the evidentiary basis for the particular ratio of increase in production relied on by Erving to support these claims. There is evidence that production under the Ouillette machines ultimately reached and even exceeded an hourly rate of 90,000 napkins per folder, but that it did not do so consistently; that Erving did not run the substitute machines at their maximum capacity in order to realize labor savings; and that production output by use of the Ouillette machines did not exceed that accom-

plished by the handwrapping operations. This evidence, considered in light of the lack of proof that the Campbell Wrappers would have permitted greater efficiency in production than the Ouillette machines which were ordered to the same capacities, renders the 7 to 9 ratio of the claimed production increase entirely speculative, and furnishes a further ground for the determination that Hudson-Sharp may not be deemed to have contemplated liability for damages of such an uncertain nature.

*Allowance of Interest*

■ In a diversity of citizenship suit, the allowance of interest is governed by state law. Robert C. Herd & Company v. Krawill Machinery Corporation, 256 F.2d 946, 952 (4th Cir. 1958), aff'd. 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820. Where the parties were not in agreement as to the proper measure of the loss, the injured party is not entitled to prejudgment interest under Wisconsin law. Wisconsin Screw Company v. Fireman's Fund Insurance Company, 193 F.Supp. 96, 125 (E.D.Wis.1961), aff'd. 7 Cir., 297 F.2d 697; United States for Use of S. J. Casper Co. v. Zelonky, 209 F.Supp. 305, 308 (E.D.Wis.1962); and Maslow Cooperage Corporation v. Weeks Pickle Company, 270 Wis. 179, 70 N.W.2d 577 (1955). Under these authorities, Erving is not entitled to interest until the amount of recovery is fixed and determinate. The Master's disallowance of interest is hereby affirmed.

Plaintiff, Erving Paper Mills, is hereby directed to prepare an order for judgment on its claims for damages consistent with the court's rulings on objections to the Master's findings of fact and conclusions of law and to submit the same to counsel for defendant, Hudson-Sharp Machine Co., for approval as to form and arithmetical computation only.

### ORDER

The parties having advised the court that they are unable to agree as to the period for computation of interest according to the decision heretofore entered in this case on April 20, 1967,

Now, therefore, it is ordered: That interest on the damages awarded to plaintiff be computed as follows:

1. As provided in the Master's Conclusion of Law No. 2, towit:

"Plaintiff is entitled to judgment against the defendant in the amount of $37,815.41, together with interest on $1,500.00 at 5% from June 29, 1966, and with interest on the total amount from the 9th day of December, 1966."

2. Interest on the additional amount of damages approved by the court is to run from date of the court's decision on the question of damages, towit: April 20, 1967.

It having come to the attention of the court that there is error in the decision as to the date of delivery of the first Ouillette machine, the decision is hereby amended to delete the date "January 9, 1959" appearing on line 13, of page 7, and substituting therefor the date "January 6, 1959."

On Motion for Allowance of Costs

The parties have submitted to the court the question of allowance as taxable costs in this action certain items requested by plaintiff to which defendant has taken objection. The items in dispute are (1) the cost of copies of depositions taken for purposes of the case, and (2) allowance for mileage for travel of plaintiff's witnesses from Massachusetts to Wisconsin, in excess of 100 miles (or 200 miles per witness per appearance).

1. *Cost of copies of depositions.*

 Allowable costs are limited to the cost of the original of depositions and do not include the expense of duplicate copies obtained for convenience of counsel. Fleischer v. A. A. P., Inc., 36 F.R.D. 31, 36 (S.D.N.Y.1964), citing numerous authorities. Although plaintiff contends that the matter should be determined under the law of Wisconsin in this diversity action, which would allow the cost of copies, it has cited no authority for this proposition. The federal cases uniformly are decided under Rule 54(d) of the Federal Rules of Civil Procedure and Section 1920(2), Title 28 U.S.C.A. See 4 Moore, Federal Practice (2nd ed.) § 26.36, at pages 1697–98.

2. *Travel Mileage.*

 The great weight of authority has limited the recoverable travel expenses of witnesses to the 100-mile limit applicable to issuance of a subpoena under Rule 45(e) of the Federal Rules of Civil Procedure. See Friedman v. Washburn Co., 155 F.2d 959, 963 (7th Cir. 1946), and Rule 17 of the Local Rules of the District Court for the Eastern District of Wisconsin. In the recent case of Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), it was held that the district judge in proper cases had narrow discretion to allow mileage awards exceeding the 100-mile rule, under Rule 54(d) of the Federal Rules of Civil Procedure. Although the court did not specify what special circumstances would warrant allowance of such travel fees, it is suggested that prior authorization of the travel by the trial court may support a subsequent allowance of costs for the excess mileage. In the instant case there appear to be no special circumstances that would warrant disregard of the Local Rule or call for the exercise of discretion to award mileage in excess of a total of 200 miles per witness per appearance.

In accordance with the foregoing memorandum,

Now, therefore, it is ordered that plaintiff's requests for allowance as taxable costs of the expense of copies of depositions and travel fees in excess of 200 miles per witness per appearance must be, and they are hereby denied.