SPRECHER, Plaintiff-Appellant, Cross-Respondent, v. WESTON'S BAR, INC., and another, Defendants-Respondents, Cross-Appellants.

*No. 75–101. Submitted on briefs March 30, 1977.—*
*Decided May 17, 1977.*
(Also reported in 253 N.W.2d 493.)

For the appellant the cause was submitted on the briefs of *Hill, Quale, Hartmann, Bohl & Evenson* of Baraboo.

For the respondents the cause was submitted on the briefs of *Myron E. Larowe,* attorney, of Reedsburg, and *John G. Gerlach,* of counsel, of Madison.

CONNOR T. HANSEN, J. In 1964, Albert H. Sprecher and Alma Sprecher owned and operated Sprecher's Bar, Inc., at 616 Water street, in Prairie du Sac, Wisconsin. Albert H. Sprecher was the licensing agent for the corporation which held the class B liquor

license. In the same year they sold Sprecher's Bar, Inc., to Cyril G. and Julia A. Weston but retained ownership of the building in which it was located. The Westons changed the name of the corporation to Weston's Bar, Inc. In years subsequent to 1964, the village board granted the liquor license to Weston's Bar, Inc.

A series of yearly leases were executed between the parties for the building in which the business was operated. On April 4, 1969, the parties entered into a new or renewal lease, which ran for a period of one year from July 1, 1969, to June 30, 1970. Paragraph 15 of the lease stated:

"15. *SURRENDER OF LICENSES.* The Lessee further agrees and covenants that at the termination of the within lease or any renewal thereof, or in the event that the Lessor, with cause, elects to terminate the lease for any of the reasons set forth in Agreement 13 above, said Lessee, upon the request of the Lessor, will quietly and promptly yield and surrender and deliver up to the Lessor any and all licenses to engage in the sale of beer or intoxicating liquor then in their possession. It is fully understood by Lessor and by Lessee that this provision may be deemed inoperative in law and Lessee shall incur no damages of any nature in the event that this provision is found legally inoperative in event of a violation of this provision, the intent of this provision being solely to express the intentions of the parties at this time."

In September, 1969, Cyril G. and Julia A. Weston, in their individual capacities purchased the building and lot next door to the building which they were then leasing from the Sprechers. On December 19, 1969, Weston's Bar, Inc., through its sole shareholders, Cyril G. and Julia A. Weston, applied to the village board for a transfer of the liquor license from the Sprecher building to the building owned by the Westons. On December 23, 1969, the village board approved the transfer. The physical transfer of the tavern business occurred in May,

1970. Weston's Bar, Inc., continued to pay rent under the lease to the Sprechers until the lease terminated on June 30, 1970.

In April, 1970, the Sprechers commenced suit against Weston's Bar, Inc., and the Westons individually, seeking an injunction to restrain them from attempting to have the liquor license transferred from Sprecher's premises to the Weston premises. The Westons demurred and the trial court sustained the demurrer on the grounds that the provision in the lease dealing with the surrender of the license was void as against public policy. Judgment was entered accordingly and the Sprechers appealed to this court.

In *Sprecher v. Weston's Bar, Inc.,* 52 Wis.2d 677, 191 N.W.2d 212 (1971), this court reversed, holding that the pertinent lease provision was susceptible to an interpretation that ". . . the lessee upon the termination of the lease would not seek to have the liquor license transferred or a new license issued. . ." and that such an agreement, not restricting the discretionary authority of the licensing body was not void as against public policy. *Sprecher, supra,* 680. This court stated that ". . . even if an injunction is no longer possible, equity may grant damages in lieu of the equitable relief. . . ." The judgment was reversed and the case remanded with directions to the trial court to overrule the demurrer and grant leave to the defendants to file an answer. *Sprecher, supra,* 681.

The Sprechers filed an amended complaint alleging that they had been damaged by the wrongful transfer of the liquor license from the leased premises in violation of the lease terms. They sought damages from both Weston's Bar, Inc., and Cyril G. and Julia A. Weston, individually, and further sought an order that the liquor license be returned to the leased premises and that an injunction be granted restraining its subsequent transfer therefrom by the Westons.

The defendants answered, denying the essential allegations of the complaint and alleging the affirmative defense that Cyril G. and Julia A. Weston were not proper parties because they were acting in their corporate capacities. They also counterclaimed for damages in the amount of certain repair expenditures incurred by them while occupying the Sprecher premises.

The action was originally commenced by Albert H. and Alma Sprecher, owners of Sprecher's Bar, Inc., against Weston's Bar, Inc., and Cyril G. and Julia A. Weston, owners of Weston's Bar, Inc. Albert H. Sprecher died and Albert R. Sprecher, personal representative of his estate, was substituted as party-plaintiff. Alma Sprecher and Cyril G. Weston also died and they were dismissed as parties to the action.

Trial was to the court, and the trial court determined that a breach of the lease had occurred; that Weston's Bar, Inc., and Julia A. Weston were jointly and severally liable for damages caused by the breach; that the plaintiff had established damages for the loss of the liquor license to be in excess of $20,000; but that the plaintiff was entitled to judgment in the sum of only $5,000 due to his failure to mitigate damages. The trial court further determined that the defendants were entitled to judgment on their counterclaim for repair expenditures on the Sprecher building, in the amount of $96.58.

Judgment was entered against Weston's Bar, Inc., and Julia A. Weston, jointly and severally, in the amount of $4,903.42, plus costs and disbursements.

Four issues are raised by the facts of this case:

1. Did the plaintiff fail to plead and prove a condition precedent to the recovery of damages for breach of the lease?

2. Do the facts of this case justify holding the corporate-shareholder/officer-defendant, Julia A. Weston, individually and personally liable for the damages incurred by the plaintiff?

3. Did the trial court properly apply the doctrine of mitigation of damages so as to reduce the plaintiff's judgment?

4. Is the plaintiff entitled to injunctive relief to prevent the defendants from applying for a renewal of the liquor license?

### CONDITION PRECEDENT.

During the trial, the trial court denied the motions of the defendants for dismissal of the action on the grounds that the plaintiff had failed to allege and prove the performance of a condition precedent in the lease. The defendants argue that such ruling constituted error.

Paragraph 15 of the lease, in pertinent part, states ". . . said Lessee, *upon the request of the Lessor,* will quietly and promptly yield and surrender and deliver up to the Lessor any and all licenses. . . ." (Emphasis added.) The defendants contend that the underlined quote above constitutes a condition precedent; that the plaintiff failed to allege a request for either the surrender of the license or a request that the defendants not transfer the license; and that the plaintiff failed to prove either.

In *DeSalvo v. Howell Plaza Inc.,* 38 Wis.2d 167, 172, 156 N.W.2d 473 (1968), this court quoting 5 Williston, *Contracts* (3d ed.), pp. 141–143, sec. 666A, set forth the criteria for finding a condition precedent:

" 'A precedent condition in a contract is the typical kind. It must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies. . . . "Condition precedent" is one calling for performance of some act after the contract is entered into on performance of which the obligations depend. . . .' "

See also: *Nixon v. Farmers Ins. Exchange,* 56 Wis.2d 1, 4, 201 N.W.2d 543 (1972); Restatement, *Contracts,*

p. 359, sec. 250; 3A Corbin, *Contracts,* pp. 16, 17, sec. 628.

In *Locke v. Bort,* 10 Wis.2d 585, 588, 103 N.W.2d 555 (1960), this court said that in determining whether a clause in a contract constituted a condition precedent, it was essential for the trial court to look at the entire contract from the standpoint of the parties at the time they executed it and the purpose they had in view in doing so. The court in *Locke, supra,* 588, 589, quoted 3 Williston, *Contracts,* (rev. ed.), p. 2246, sec. 799, for the following principle:

" 'In each case, the intention of the parties to make the debt contingent or otherwise, must be gathered from the language used, the situation of the parties, and the subject matter of the contract, as presented by the evidence.' "

The trial court found that paragraph 15 was included in the lease for the benefit of the plaintiff. The trial court held that ". . . Conditions precedent are not favored in the law and the Court is not satisfied from the proof submitted that the Defendant has met the burden of establishing that the provision in question was intended as a condition precedent. . . ." There is a general presumption against a contract clause being construed as a condition precedent. *Locke, supra,* 589. In the instant case, the trial court gave proper consideration to the lease provisions. Its finding is correct and not against the great weight and clear preponderance of the evidence. This court in *Sprecher, supra,* stated at pp. 679, 680:

"Liquor licenses are not normally assignable. Applications for such a license or a renewal thereof are granted effective on July 1st of each year. Sec. 176.05 (5), Stats. A liquor license permitting the sale of liquor at a designated location may be modified as to a location in midterm or midyear under sec. 176.05(14), but this is at the discretion of the licensing authority. Parties

cannot bind or interfere with the exercise of the discretion of the licensing board. Consequently, a provision for the assignment of a liquor license is unenforceable against the licensing authority but not necessarily void for all purposes. *State v. Bayne* (1898), 100 Wis. 35, 75 N.W. 403; *State ex rel. Ruffalo v. Common Council* (1968), 38 Wis.2d 518, 157 N.W.2d 568."

This court, however, assumed that the parties must have intended to enter into a legal and enforceable contract and thus interpreted the lease in such a manner as to constitute an enforceable contract:

"This lease is susceptible of a reasonable interpretation that the lessee upon the termination of the lease would not seek to have the liquor license transferred or a new license issued. The effect of such an agreement is to give the owners of the property an edge in the securing of a liquor license for their building or keeping a license available for a new tenant who could qualify. We must assume the parties attempted to enter into an enforceable contract and a construction favoring enforceability should be adopted. . . ." *Sprecher, supra,* 680.

Therefore, under the particular facts of this case, the plaintiff was not required to request the surrender, yielding or delivery of the liquor license to the plaintiff at the termination of the lease as a condition precedent to recovery for a breach of the lease provisions.

The defendants argue that the plaintiff must have at least alleged and proved a request that the defendants not transfer the license between buildings as a condition precedent to damage recovery. The interpretation placed upon the lease provision by this court in *Sprecher, supra,* would, however, make the transfer of the license to a new location or the defendants' application for renewal, themselves actions in breach of the lease. It would be unreasonable to conclude that the parties would have

intended that the plaintiff must request the defendants not to breach the lease before a cause of action for breach of the lease could be brought.

## PERSONAL LIABILITY OF JULIA A. WESTON.

The defendant, Julia A. Weston, argues that the trial court committed error in denying the defendants' motion that she be dismissed as a party to the action.

Both parties concede that the defendant, Julia A. Weston, signed the lease as an officer of the defendant corporation and not as an individual. Thus, the question is whether under these circumstances liability can nevertheless be imposed upon Julia A. Weston, individually. The trial court answered the question in the affirmative, basing its decision on two separate doctrines: That of "piercing the corporate veil"; and that of holding the defendant individually liable for causing the corporation to breach its lease with the plaintiff. Both doctrines taken together support the trial court's denial of the defendants' motion.

This court has long taken the position that a corporation is treated as an entity separate from its shareholders under all ordinary circumstances and thus that contracts entered into for the corporation by its officers or agents are contracts of the corporation as a distinct legal entity and neither confer rights nor impose liabilities or restrictions on the shareholders individually. *Jonas v. State,* 19 Wis.2d 638, 644, 121 N.W.2d 235 (1963). *See also:* 18 C. J. S., *Corporations,* p. 370, sec. 5, and 19 Am. Jur.2d, *Corporations,* p. 752, sec. 1346.

However, the above-stated general principle has its exceptions. Those were set forth in a workmen's compensation case, *Milwaukee Toy Co. v. Industrial Comm.,*

203 Wis. 493, 234 N.W. 748 (1931). While stated in a different context, the exceptions have validity and retain their applicability to all cases involving corporate entities. In *Milwaukee Toy Co., supra,* this court stated at pp. 495, 496:

"A corporation is by legal fiction a person and of course is 'another' under the terms of the workmen's compensation statute. By legal fiction the corporation is a separate entity and is treated as such under all ordinary circumstances. Circumstances occasionally arise where it appears that a person 'is simply dealing with his own property through a corporate agency as absolutely as he might deal with it as an individual,' as in *Haynes v. Kenosha E. R. Co.* 139 Wis. 227, 239, 119 N.W. 568, 121 N.W. 124. If in such case applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim, the fiction is disregarded and the transaction is considered as one of the individual himself or of the corporation, whichever will prevent the inequitable result. *Haynes v. Kenosha E. R. Co., supra; Fernekes v. Nugent Sanitarium,* 158 Wis. 671, 149 N.W. 393; *Wolf Co. v. Kutch,* 147 Wis. 209, 132 N.W. 981; *Webb v. Mason,* 152 Wis. 19, 139 N.W. 442; *Koenig v. George Logemann & Sons Co.,* 170 Wis. 619, 176 N.W. 58. . . ."[1]

Based upon the evidence of record, the trial court found as findings of fact:

"8. That at all times material to this lawsuit, the defendants, Julia and Cyril Weston, had complete control and domination of Weston Bar, Inc., and that the individual defendants made no serious attempt to hold corporate meetings or to maintain records of corporate meetings and that presently and for a period of time, Weston Bar, Inc., has had no substantial assets and that

[1] *See also: Fish v. White Equip. Sales & Services, Inc.,* 64 Wis.2d 737, 743, 221 N.W.2d 864 (1974); *Marlin Electric Co. v. Industrial Comm.,* 33 Wis.2d 651, 656–658, 148 N.W.2d 74 (1967); *Jonas, supra,* 644.

the individual defendants have taken out in salary basically all of the corporate profits.

"9. That the individual defendants, Julia and Cyril Weston, were responsible for taking the liquor license from plaintiffs' premises and transferring same to an adjacent premises owned by the individual defendants.

"10. That the individual defendants, by breaching the lease, acted more for the protection of their individual interest than in the protection of the corporation, Weston Bar, Inc."

The trial court, in its conclusions of law, held:

"1. That at all times material hereto, the Corporation, Weston Bar, Inc., was the alter ego of the individual defendants, Cyril Weston and Julia Weston; that said corporation had no separate will or existence of its own.

". . .

"3. That defendant, Weston's Bar, Inc., breached the terms of the lease by transferring plaintiffs' liquor license from plaintiffs' premises to an adjoining building owned by Cyril G. Weston and Julia A. Weston individually; that Cyril G. Weston and Julia A. Weston procured such breach, and in so doing acted more in their individual interest than in the interest of the defendant corporation and are not conditionally privileged from liability for such breach; that to maintain the corporate fiction and relieve Julia A. Weston from liability for such breach would result in a constructive fraud and tend to defeat the strong equitable claim of the plaintiffs."

Based upon our review of the record, we hold that the trial court's findings of fact were not against the great weight and clear preponderance of the evidence. The conclusions of law were not in error. The circumstances of this case present a proper instance in which to disregard the corporate fiction and hold the defendant, Julia A. Weston, individually liable.

In *Lorenz v. Dreske*, 62 Wis.2d 273, 286, 214 N.W.2d 753 (1974), this court held that a corporation officer

might be held personally liable for procuring, causing or authorizing a breach of a contract by the corporation. Therein it was stated, at p. 286:

". . . One who, without a privilege to do so, induces another or causes a third person not to perform a contract with another is liable for the harm caused thereby and any conduct which is intended to and which makes performance of a contract more onerous is a tort against the promisor unless privileged. . . ."

*See also: Wisconsin Power & Light Co. v. Gerke,* 20 Wis. 2d 181, 189, 121 N.W.2d 912 (1963). Quoting extensively from Ballantine, *Corporations,* pp. 275, 276, sec. 112, this court stated:

" 'Some difficulty has been encountered by the courts in dealing with the problem of the liability of the directors or the officers of a corporation for procuring, causing or authorizing a breach of contract by the corporation. A few decisions have declared that directors or officers may not be held liable for causing their corporation to violate its contract, regardless of their ulterior motives or malice.

" 'This seems clearly an unsound doctrine. An agent is not relieved from liability by the fact that he is acting on account of his principal, except where he is exercising a privilege of the principal or where he himself has a privilege to act for the benefit and protection of the principal. If a director or managing officer acting *bona fide* procures, causes or participates in authorizing a breach of contract between his company and a third person, he may well be regarded as protected only by a conditional privilege, which will be destroyed by a wrongful motive. This conditional privilege of corporate representatives should be recognized in the interest of freedom in exercising discretion to protect the best interests of the corporation which they represent. In the absence of such a privilege, the repudiation of performance of an unfair and ruinous, but valid, contract by a corporation would involve not only liability for breach of contract on the part of the corporation, but joint and several tort liability on the part of all the directors who

acted for the corporation in terminating performance. . . . If directors are acting in good faith for the protection of the interests of their corporation and in the course of their official duty, they should be protected. . . . [footnotes omitted]' " *Lorenz, supra,* 286, 287.

Finally, in *Lorenz, supra,* 287, this court in effect stated that it was sufficient in a cause of action against the corporate officer individually that the act procuring the breach was done not necessarily with malice, but with an improper motive. *Mendelson v. Blatz Brewing Co.,* 9 Wis.2d 487, 493, 101 N.W.2d 805 (1960).

On the record before us, the defendant, Julia A. Weston, could not contest the fact that she and her husband either transferred or caused the transfer of the license to their premises. Also they could not contest the fact that they were the corporate officers and sole stockholders when they so acted.

The question remains as to whether the defendants had an improper motive in causing the corporation to transfer the license and thus breach the contract. The trial court held that they did. That motive was the furtherance of their own pecuniary advantage by retaining the license; by housing the corporation tavern business in their own premises; and by causing the corporation to pay them, in their individual capacities, $250 per month rent.

Thus while acting as a corporate officer the defendant, Julia A. Weston, induced the corporation to breach its lease with the plaintiff. The trial court found that she did so based on an improper motive, *i.e.,* her own individual pecuniary gain, not merely as a shareholder. That finding of the trial court as to the impropriety of the defendant's motive in procuring the corporation's breach of the lease is not contrary to the great weight and clear preponderance of the evidence. Under these circum-

stances, the defendant rendered herself personally liable for the harm caused by the breach.

The trial court did not err in its refusal to dismiss the defendant in her individual capacity as a party defendant. Julia A. Weston was subject to individual liability.

## MITIGATION OF DAMAGES.

The law is well established in this state that a plaintiff must do all that is reasonable to minimize damages after a breach of contract has occurred. *O'Brien v. Isaacs,* 17 Wis.2d 261, 266, 116 N.W.2d 246 (1962); *Thurner Heat Treating Co. v. Memco, Inc.,* 252 Wis. 16, 26, 30 N.W.2d 228 (1947); *Monroe County Finance Co. v. Thomas,* 243 Wis. 568, 571, 11 N.W.2d 190 (1943); *Winkler v. Racine Wagon & Carriage Co.,* 99 Wis. 184, 188, 74 N.W. 793 (1898).

While the "duty" to mitigate damages rests with the aggrieved party, the burden of proof is upon the defaulting party to establish that the former failed to do all that was reasonable to minimize his damages subsequent to the breach. *Byrnes v. Metz,* 53 Wis.2d 627, 631, 193 N.W.2d 675 (1972). *See also: State ex rel. Schilling & Klingler v. Baird,* 65 Wis.2d 394, 398, 222 N.W.2d 666 (1974); *Schiller v. Keuffel & Esser Co.,* 21 Wis.2d 545, 553, 124 N.W.2d 646 (1963); *Barker v. Knickerbocker Life Ins. Co.,* 24 Wis. 630, 638 (1869).

The plaintiff argues that he has, in effect, mitigated his damages by including in the computation of damages a factor indicating that he re-rented the premises, albeit for commercial purposes, at a lower rental; and that in fact the premises remained vacant for a considerable amount of time; and that the damage computations were very favorable to the defendants.

The defendants dispute the fact that any litigation occurred. They point out that in December, 1969, one Evelyn Johnson, a liquor license holder, offered to transfer her license to the plaintiff's premises for $5,000. The plaintiff refused the offer and stated that he intended to get his own license back. The defendants thus contend that the plaintiff was given the opportunity to minimize his damages by accepting the Johnson offer; that it would have been reasonable for the plaintiff to do so; and that because the plaintiff failed to take advantage of the opportunity, his damages must be reduced to the $5,000 amount.

The trial court agreed with the defendants, stating as findings of fact:

"14. That in September of 1969, Mrs. Evelyn Johnson moved her liquor license to premises owned by the individual defendants at 612 Water Street, Prairie du Sac, Wisconsin.

"15. That in December of 1969, Mrs. Evelyn Johnson offered to transfer her liquor license to plaintiffs premises for a price of Five Thousand and no/100 ($5,000.00) Dollars for the equipment and that plaintiff, Albert Sprecher, refused said offer.

"16. That plaintiffs could have mitigated their damages by the payment of Five Thousand and no/100 ($5,000.00) Dollars to Mrs. Evelyn Johnson and there now is due and owing by defendants, Julia Weston and Weston Bar, Inc., jointly and severally the sum of Five Thousand and no/100 ($5,000.00) Dollars, together with the costs and disbursements of this action."

The trial court accordingly reduced the plaintiff's damages resulting from the breach to a maximum of $5,000.

The plaintiff, on a number of grounds, now contends that the trial court misapplied the mitigation doctrine. Under these facts none of the contentions have merit.

It is true the duty to mitigate damages is imposed only to the extent that it is reasonable to do so. *Byrnes,*

*supra,* 632; *O'Brien, supra,* 266. In *Monroe County Finance Co., supra,* 571, this court cited the Restatement, *Contracts,* p. 535, sec. 336(1), for the general mitigation rule applicable in Wisconsin:

" '. . . Damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable effort without undue risk, expense, or humiliation.' "

*Comment a.* to the above Restatement section, p. 536, states in part:

". . . It is not reasonable to expect the plaintiff to avoid harm if at the time for action it appears that the attempt may cause other serious harm. He need not enter into other risky contracts, incur unreasonable inconvenience or expense, disorganize his business, or put himself in a humiliating position or in one involving loss of honor and respect."

In *Pewaukee Milling Co. v. Howitt,* 86 Wis. 270, 56 N.W. 784 (1893), a lessor was required by lease provisions to install a 50 horse power wheel in a mill. The lessor installed instead a smaller wheel. The lessee brought suit for damages based upon rental value factors. The contention was made by the lessor that the lessee could have reduced his own damages by taking it upon himself to install a new wheel or modify the present one. This court rejected the contention stating at p. 275:

". . . Failure on the part of the lessor plaintiff to perform its covenant in this respect could not have the effect to impose upon the lessee the risk of success or failure in putting in or setting a *new* wheel, a risk which might involve the lessee in uncertainty of result and damage to the mill or power, and consequent risk and loss. The burden is one which the lessor had expressly taken upon itself, and which it was in every respect proper it should bear. Therefore the defendant was not bound to put

in a new wheel, the expense of which it seems was about $800, or to reset or alter the one put in, or its surroundings, the doing of which the evidence tends to show would cost not less than $200. For a failure on the part of the plaintiff in these respects the defendant is entitled to recover the consequent damages. . . ."

Thus this court held that it would be unreasonable to require the lessee therein to expend the sums of money required to minimize the damages caused by the lessor's breach.

In 22 Am. Jur.2d, *Damages,* p. 61, sec. 37, the general rule discussed above is stated as follows:

"Following a breach, it is sometimes possible for the nondefaulting party to minimize his damages by spending a sum of money. If the courts were to require this expenditure in every case in which it turns out, as a matter of hindsight, that such expenditure would have minimized the loss, courts would effectively be requiring the innocent party to incur risks beyond those in the contract in the hope that damages could be recovered from the breacher. Therefore, courts generally do not determine damages based upon the making of these expenditures unless (1) they are small in comparison to the possible losses, and (2) it is virtually certain that the risks incurred will avoid at least a part of the loss. Damages will not be decreased through showing that a substantial expenditure would have minimized the total loss or that the suggested expenditure may or may not have decreased damages. The defaulter is in no position to cast this risk of substantial expenditures on the plaintiff. Since such risks arose because of the breach, they are to be borne by the defaulting party."

The record is clear that the plaintiff did nothing to attempt to minimize his damages. He neither applied to the village board for the issuance of a new liquor license, nor for the renewal in his name of the license which he contended belonged to his premises. He made no ascertainable efforts to rent his premises to a licensed tenant.

The trial court found that the plaintiff could have mitigated his damages in December, 1969, by accepting Johnson's offer. Thus the trial court implicitly concluded that it would have been reasonable for the plaintiff to expend the sum of $5,000 to acquire a licensed tenant in his building.

It cannot be said that the trial court's conclusion was in error. There can be no doubt that such action on the part of the plaintiff would have been successful in minimizing losses. Had the Johnson offer been accepted, virtually no additional losses would have been suffered after the Johnson license was transferred to the plaintiff's premises.

A question remains as to the sum of the required expenditure. It cannot be denied that by any measure the sum of $5,000 is substantial. In *Pewaukee Milling Co., supra,* this court held that it would be unreasonable to require the expenditure of a smaller sum. In *Pewaukee Milling Co., supra,* 275, there was present the added element that the expenditure of the funds would engage the plaintiff in ". . . a risk which might involve the lessee in uncertainty of result and damage to the mill or power and consequent risk and loss. . . ." No such risks or uncertainties were involved here. Moreover, the potential losses, measured over the life of the building were high. Whether or not the expenditure of $5,000 would be considered small in comparison to the possible losses was a matter for the trial court's determination.

The defendants had the burden of establishing that the plaintiff failed to make ordinary and reasonable efforts to minimize his losses once the breach occurred. The record reflects that the plaintiff did nothing to minimize losses even in the face of the opportunity offered by Johnson. The trial court found that the expenditure of $5,000 in the acceptance of the Johnson offer would have

been reasonable. The defendants met their burden and it cannot be said that the trial court was in error. The mitigation doctrine was correctly applied to reduce the plaintiff's damages to a maximum of $5,000.

In *Howard v. State Farm Mut. Auto L. Ins. Co.*, 70 Wis.2d 985, 991, 236 N.W.2d 643 (1975), this court recently stated that the failure to mitigate damages is an affirmative defense which must be raised by answer or be deemed waived. *See also: Schiller, supra,* 553; *Kennedy-Ingalls Corp. v. Meissner,* 11 Wis.2d 371, 386, 105 N.W.2d 748 (1960) ; *Schmidt v. Schabow,* 265 Wis. 154, 159, 160, 60 N.W.2d 735 (1953).

In this case the defendants did not raise the defense of mitigation of damages in their answer, nor at any time during or after trial did they move to amend their pleadings to include such defense. The plaintiff contends that by failing to properly raise the affirmative defense it was waived and that the trial court therefore erred in invoking the mitigation doctrine. However, we believe the plaintiff has not considered two essential facts. First, sec. 263.28, Stats. 1973[2] grants the trial court great discretion as to admissibility of proof at variance with the pleadings.[3] Second, a trial court possesses the

---

[2] "*263.28 Variances, materiality.* (1) No variance between the allegation in a pleading and the proof shall be deemed material unless it misleads the adverse party to his prejudice. Whenever it shall be proved to the satisfaction of the court that a party has been so misled, and in what respect he has been misled, the court may order the pleading amended upon such terms as may be just.

"(2) When the variance is not material, the fact shall be found in accordance with the evidence and the court may order an amendment without costs." This section is now contained in substance in sec. 802.09, Stats.

[3] *See: Steiger v. Nowakowski,* 67 Wis.2d 355, 361, 227 N.W.2d 104 (1975); *Martineau v. State Conservation Comm.,* 66 Wis.2d

same amount of discretion to amend the pleadings to conform to the proof both during and after trial and both on the motion of the parties and on its own motion.[4]

Here the record reflects that the defendants introduced the mitigation issue through the testimony of Johnson. The plaintiff objected ". . . to this as all problematical and irrelevant." The defendants informed the trial court that the testimony was introduced in regard to mitigation of damages. The trial court accepted the testimony subject to the plaintiff's objection. Plaintiff's counsel was given ample opportunity to cross-examine Johnson, expressed no surprise, and encountered no difficulties in cross-examination and recross-examination.

The plaintiff's counsel made no specific objection to the proof as not conforming to the pleadings during or at the conclusion of the trial. The trial court, as evidenced by its written decision exercised its discretion and decided to overrule the general objection of the plaintiff and accept the mitigation testimony into evidence. That fact in itself sufficiently distinguishes this case from those cited by the plaintiff in his brief.[5] In those cases it was the trial court which in the exercise of its discretion *refused* to admit mitigation evidence because the affirmative defense had not been pleaded. That exercise of discretion was upheld on appeal in each case because

439, 445, 225 N.W.2d 613 (1975); *Lake Geneva v. States Improvement Co.,* 45 Wis.2d 50, 58, 172 N.W.2d 176 (1969); *Walber v. Walber,* 40 Wis.2d 313, 320, 161 N.W.2d 898 (1968); *Duffy v. Scott,* 235 Wis. 142, 147, 292 N.W. 273 (1940).

[4] *Johnson v. Chemical Supply Co.,* 38 Wis.2d 194, 207, 156 N.W.2d 455 (1968); *Schneck v. Mutual Service Casualty Ins. Co.,* 18 Wis.2d 566, 572, 119 N.W.2d 342 (1963); *Neenah v. Krueger,* 206 Wis. 473, 475, 240 N.W. 402 (1932).

[5] *Kennedy-Ingalls Corp. v. Meissner, supra; Schmidt v. Schabow, supra; Gauf v. Milwaukee Athletic Club,* 151 Wis. 333, 139 N.W. 207 (1912); *Erving Paper Mills v. Hudson-Sharp Machine Co.* (E.D. Wis. 1967), 271 Fed. Supp. 1017.

under the circumstances the refusal to admit the evidence was a proper exercise of discretion. If the trial court admits the evidence, rather than refuses to admit the evidence, this court's decision on appeal still rests on a determination of whether the trial court properly exercised its discretion.

This case presents a procedural situation similar to that in *Huntoon v. Capozza,* 57 Wis.2d 447, 204 N.W.2d 649 (1973). In that case the trial court found a breach of contract based upon an act not alleged in the complaint. Evidence concerning the act was admitted on other grounds. Neither party moved to amend the complaint to reflect the act. This court stated at p. 456:

"Upon a fuller briefing of the tavern license issue, the trial court apparently amended the complaint, upon its own motion, to conform with the evidence adduced at trial. This is only inferable from the trial court's memorandum decision wherein it concluded the lost tavern license was a material breach of the land contract. It is well established that a trial court has great discretion to amend the pleadings. This may be upon a trial court's own motion, and such amendment may be granted after judgment. We conclude, therefore, that the trial court properly amended the pleadings, albeit without formality, upon its own motion and after being advised of the *Sprecher Case.* In view of the trial court's permitting both parties to file briefs supporting their positions on this issue, we are satisfied that there was no abuse of discretion in allowing this pleading amendment."

In the instant case it appears that the trial court upon its own motion informally amended the pleadings of the defendant to conform to the proof. The trial court had the discretion to do so. There is no indication that the plaintiff was prejudiced by any variance nor that the trial court abused its discretion in so amending the answer to allege the affirmative defense. Both parties were fully aware of the issue.

## INJUNCTIVE RELIEF.

The plaintiff, as an alternative to an award of full damages, moved the trial court to restrain the defendants from applying for a renewal of the liquor license. The trial court denied the motion. The plaintiff now requests that this court direct that such a restraining order be issued.

Injunctive relief is not a proper remedy in a case where there is no showing that irreparable harm will result and that damages are not an adequate remedy. *American Mut. Liability Ins. Co. v. Fisher,* 58 Wis.2d 299, 305, 206 N.W.2d 152 (1973) ; *Klump v. Cybulski,* 274 Wis. 604, 609, 81 N.W.2d 42 (1957) ; *Kuntz v. Werner Flying Service, Inc.,* 257 Wis. 405, 410, 43 N.W. 2d 476 (1950) ; *Gitlitz v. Plankington Building Properties, Inc.,* 228 Wis. 334, 338, 339, 280 N.W. 415 (1938).

In the case before us, the plaintiff prevailed in his action for damages: the remedy is adequate; and there has been no showing of irreparable harm. The injunctive relief sought by the plaintiff would not be an appropriate remedy.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J. *(concurring).* I think that the figure of damages set by the trial court and affirmed by this court is reasonable in view of the record in this seven-year-old, twice-appealed-to-this-court case, and I therefore concur.

The record leaves one with the impression that the plaintiff did not exercise minimal efforts to apply to municipal authorities for another license or to secure another tenant who possessed such a license, seeking instead to secure by this lawsuit equivalent financial benefits. At the same time, the defendants failed to prove

that had the plaintiff made these efforts there was a good probability of success in obtaining a license.

I do not believe the plaintiff's proof of $20,000 damages is correct. The expert testimony as to diminished value was based on the assumed facts (1) that because of the defendants' breach the property would never be used as a tavern, and (2) that but for the defendants' breach the property would always have been so used. These assumptions are not based on fact or any reasonable probabilities and therefore are not reliable. On the basis of the total record the trial court's determination of damages in the amount of $5,000 seems just and reasonable. I wish to make clear, however, that I do not concur in the establishment of any precedent or rule of law to the effect that the expenditure of $5,000 should be required in mitigation of damages with regard to a case such as this one involving the sums of money contemplated here. Nor do I interpret the opinion of the court as endorsing such a rule, for it would be manifestly unfair and unreasonable in the majority of cases.

I am authorized to state that Mr. Justice HEFFERNAN joins in this concurrence.