MILWAUKEE FEDERATION OF TEACHERS, LOCAL NO. 252, Appellant, v. WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent: MILWAUKEE BOARD OF SCHOOL DIRECTORS, Co-Respondent: MILWAUKEE TEACHERS EDUCATION ASSOCIATION, Co-Respondent: UNITED MILWAUKEE EDUCATORS, Co-Respondent.

*No. 76–049. Argued May 3, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 314.)

For the appellant there were briefs by *Peter D. Gold-berg, John S. Williamson, Jr.,* and *Goldberg, Previant & Uelmen, S. C.,* of Milwaukee, and oral argument by *Peter D. Goldberg.*

For respondent Wisconsin Employment Relations Commission, the cause was argued by *David C. Rice,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For co-respondent Milwaukee Teachers Education Association, there was a brief by *Richard Perry, Arthur Heitzer,* and *Perry & First, S. C.* of Milwaukee, and oral argument by *Richard Perry.*

HANLEY, J. Two issues are presented on this appeal:
1. Does the Municipal Employment Relations Act, as amended, prohibit a municipal employer from entering

into and maintaining a dues checkoff arrangement with a minority union?

2. Is it a denial of equal protection for a municipal employer to enter into a dues checkoff arrangement with a majority union while refusing to enter into a similar arrangement with minority unions?

*Statutory Prohibition to Minority Union Checkoffs*

The first issue involves the construction of sec. 111.70, Stats. (1973), which governs the relationships between the municipality and its employees. The MFT asserts that under the provisions of this section, the School Board may not enter into a dues checkoff arrangement with the majority union, MTEA, while at the same time refusing to enter into a similar arrangement with the MFT and other minority unions. The Commission and the MTEA argue, on the other hand, that the employer and the majority union may establish an exclusive checkoff arrangement and, furthermore, that the employer would commit a prohibited practice if it were to agree to such an arrangement with any other union.

The appellant, MFT, bases its argument substantially on this court's decision in *Board of School Directors v. WERC, supra.* Decided in 1969, this decision held, *inter alia,* that an exclusive checkoff agreement between a municipal employer and the majority and certified union representative was prohibited under the then applicable statute.

Recognizing first that a union which is certified by the Commission pursuant to the statute becomes the exclusive collective bargaining representative of all of the employees in the bargaining unit, *Board of School Directors v. WERC, supra* at 647, the court noted that although sec. 111.70(3)(a), Stats., prohibits a municipal employer from interfering with an employee's exercise of his or her right to join or not to join a labor organization, the court observed that not all differences in treatment

accorded labor *organizations* purporting to represent municipal employees within the unit constitutes a violation of this section. Nevertheless, this court concluded that an exclusive dues checkoff arrangement made only with the majority, certified union was not a difference of treatment permissible under the Act.

"The WERC made no attempt to explain how the granting of exclusive checkoff was rationally related to the functioning of the majority organization *in its representative capacity;* nor can we see any relationship whatsoever. The sole and complete purpose of *exclusive checkoff* is self-perpetuation and entrenchment. While a majority representative may negotiate for checkoff, he is negotiating for all the employees, and, if checkoff is granted for any, it must be granted for all.

"While the interpretation given to an administrative agency's interpretation of a statute is entitled to great weight, the construction of a statute is still a question of law and this court is not bound by the agency's construction. *Johnson v. Chemical Supply Co.* (1968), 38 Wis.2d 194, 156 N.W.2d 455. We think an exclusive checkoff agreement is a prohibited practice as a matter of law." *Board of School Directors v. WERC, supra* at 649–50.

In assessing the purpose of an exclusive checkoff as being a device to perpetuate and entrench the dominant union, this court observed in a footnote:

"Agreements which seek to perpetuate the majority representative are often referred to as 'union security' provisions. Most often 'union security' agreements require that employees in a given unit must be members of the majority union to keep their jobs. Assembly Bill 389 (1965) would have authorized a municipal employer to enter into a 'union security' agreement. The Senate failed to override the governor's veto by one vote and the bill was rejected.

"An exclusive checkoff agreement, while not nearly as effective as a 'union security' agreement, certainly falls into the same family." *Board of School Directors v. WERC, supra* at 649, n. 4.

Barring changes in the law subsequent to this decision, the rule in *Board of School Directors v. WERC* would be applicable to this appeal and would necessitate a reversal of the circuit court's order.

The respondents argue that the law has been changed so as to nullify the *Board of School Directors* decision. There is no doubt that changes have been made in the provisions of sec. 111.70, Stats., since that decision. In 1971 the legislature amended the statute to provide for fair-share agreements. 1971 Wis. Laws, ch. 124. A fair-share agreement is defined by sec. 111.70(1)(h), Stats. (1975), as follows:

"(h) 'Fair-share agreement' means an agreement between a municipal employer and a labor organization under which all or any of the employees in the collective bargaining unit are required to pay their proportionate share of the cost of the collective bargaining process and contract administration measured by the amount of dues uniformly required of all members. Such an agreement shall contain a provision requiring the employer to deduct the amount of dues as certified by the labor organization from the earnings of the employes affected by said agreement and to pay the amount so deducted to the labor organization."

Other subsections of the statute were also amended to reflect the newly legislated authorization for fair-share agreements. Sec. 111.70(3)(a)2 was renumbered and amended to state that the prohibition against a municipal employer encouraging or discouraging membership in any labor organization by discrimination with regard to hiring, tenure, or other terms and conditions of employment "shall not apply to a fair-share agreement." Sec. 111.70(3)(a)3, Stats. (1975). The amendment also created sec. 111.70(3)(a)6, Stats., which provides that it shall be a prohibited practice for a municipal employer:

"6. To deduct labor organization dues from an employe's or supervisor's earnings, unless the municipal employer has been presented with an individual order

therefor, signed by the municipal employe personally, and terminable by at least the end of any year of its life or earlier by the municipal employe giving at least 30 days' written notice of such termination to the municipal employer and to the representative organization, *except where there is a fair-share agreement in effect.*" (Emphasis supplied.)

The above statutory provision clearly indicates the legislature recognized and distinguished fair-share checkoff from union dues checkoff.

The legislature also created sec. 111.70 (3) (a) 4, Stats., to make it a prohibited practice for an employer to refuse to bargain collectively with the representative of a majority of its employees, and sec. 111.70 (4) (d) 1, Stats., to expressly state that the representative chosen by a majority of the employees in the bargaining unit shall be the exclusive collective bargaining representative of all the employees. 1971 Wis. Laws, ch. 124, sec. 7.

It is the position of both the Commission and the MTEA that these amendments strike "directly at the court's objection [in *Board of School Directors v. WERC*] to the entrenching quality of exclusive dues checkoff." Essentially, the respondents argue that because the legislature, by these amendments, has expressly afforded the majority, certified union one union security device— "fair-share" agreements—the legislature has also implicitly sanctioned other security devices—in this case, exclusive checkoff arrangements.

However, the respondents' arguments do not withstand close examination. First, it should be noted that the function of the fair-share agreement is substantially different from that of the exclusive checkoff. Fair-share agreements are generally regarded as devices whereby all public employees in the bargaining unit are "compelled to pay . . . his or her 'fair-share' of the [certified] union's actual cost of negotiations and representation. . . ." Hay, "Union Security and Freedom of Association," in

*Labor Relations Law in the Public Sector,* 145, 146 (A. Knapp ed. 1977). Its validity rests on the theory that all employees who benefit from the majority union's representative efforts should financially support those efforts; the fair-share agreement is, in the words of this court in *Board of School Directors v. WERC, supra* at 649, "related to the functioning of the majority organization in its representative capacity. . . ."

The checkoff, on the other hand, is an "an employee's assignment of so much of his wages as may be necessary to meet his union dues, and his direction to his employer to pay the amount to the treasurer of his union." 48 Am. Jur.2d *Labor and Labor Relations,* sec. 181 (1970). In *Board of School Directors v. WERC, supra* at 649, this court concluded that there was no reasonable relationship between granting of an exclusive checkoff and the functioning of the majority organization in its representative capacity; that "[t]he sole and complete purpose of exclusive checkoff is self-perpetration and entrenchment." The respondents do not now challenge the court's assessment of the exclusive checkoff.

Thus distinguished in function and purpose, do the legislative amendments impliedly permit the exclusive device? Under a statutory construction analysis, the answer must be no.

To begin, one of the more significant factors which entered into the court's decision in *Board of School Directors v. WERC* was the statute's prohibition against a municipal employer's encouraging or discouraging membership in any labor organization, or in interfering with or restraining any municipal employee in the exercise of the employee's right to join a labor organization. The thrust of this prohibition has not been changed by the amendments except that the statute now provides that a municipal employer will not commit this prohibited prac-

tice by entering into a fair-share agreement with the certified union. Sec. 111.70(3)(a)3, Stats. (1975).

Next, the amendments created a new subsection which expressly provides that the certified union "shall be the exclusive bargaining representative of all employees in the unit for the purpose of collective bargaining." Because the statute construed in the *Board of School Directors v. WERC* decision did not expressly provide for exclusive representation, the respondents argue that this amendment nullified the decision so as to make it a prohibited practice for a municipal employer to enter into a checkoff arrangement with a minority union. However, this argument is ineffective when the entire decision in that case is read. When this is done, the reader will note that the court, before determining the validity of an exclusive checkoff, approved the WERC's position that the certified union was the exclusive representative of all employees in the bargaining unit for purposes of collective bargaining. *See, Board of School Directors v. WERC, supra* at 645–47. Nevertheless, even in light of this right to represent all employees in the bargaining process, this court noted, "While a majority representative may negotiate for checkoff, he [or it] is negotiating for all of the employees, and, if checkoff is granted for any, it must be granted for all." *Board of School Directors v. WERC, supra* at 649–50.

Finally, it is significant that the amendments to the statute do not expressly provide the certified union with a right to an exclusive checkoff arrangement. Admittedly, the amendments define and explain the use of the fair-share agreement and indicate that the dues representing the employee's share of the union's exclusive representation costs may be deducted from his or her paycheck. Secs. 111.70(1)(h) and 4(d), Stats. Thus, by bargaining for and obtaining a fair-share agreement with the municipal employer, the certified union may obtain a checkoff of the appropriate amounts from the paychecks

of both union and non-union employees. However, the amendments do not expressly grant to the certified union a right to an exclusive checkoff nor expressly deny, under all circumstances, minority union members the opportunity of arranging a checkoff of their dues.

As the respondents point out, this court generally places substantial reliance on the interpretation given a statute by the administrative agency charged with the duty of its enforcement. *Robinson v. Kunach,* 76 Wis.2d 436, 446, 251 N.W.2d 449 (1977); *Milwaukee v. WERC,* 71 Wis.2d 709, 715, 239 N.W.2d 63 (1976). However, the interpretation of a statute is a question of law which this court has a duty to resolve, *Robinson v. Kunach, supra,* and this court is not bound by the agency's interpretation when it is erroneous, *Johnson v. Chemical Supply Co.,* 38 Wis.2d 194, 156 N.W.2d 455 (1968), or when it is not of long standing or without challenge by governmental authorities and the courts. *Beloit Education Association v. WERC,* 73 Wis.2d 43, 67–68, 242 N.W.2d 231 (1976). Here, we are dealing with a statute that has been relatively recently amended and which has been interpreted by the commission in a manner contrary to a previous decision of this court.

One of the basic tenets of statutory interpretation is that the legislature is presumed to act with full knowledge of existing laws, including prior statutes. *Joint School District No. 2 v. State,* 71 Wis.2d 276, 283, 237 N.W.2d 739 (1976); *State ex rel. Klinger & Schilling v. Baird,* 56 Wis.2d 460, 467–68, 202 N.W.2d 31 (1972).

"Where a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the court's construction is not an equivocable act. The legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain

unchanged; for the principle of the courts' decision—legislative intent—is a historical fact and, hence, unchanging. Thus, when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct. This being so, however, the courts are henceforth constrained not to alter their construction; having correctly determined legislative intent, they have fulfilled their function." *Zimmerman v. Wisconsin Electric Power Co.*, 38 Wis.2d 626, 633–34, 157 N.W.2d 648 (1968). *See also,* 2A Sutherland, *Statutory Construction* §45.12 at 37 (4th ed., Sands, 1973).

It has also been stated that an amendment to a statute changes the previous law only so far as it expressly states or necessarily implies change:

"[A]s to changing statutory law, there is a presumption against the implied repeal or amendment of any existing statutory provision. In accord with this conservative attitude, an amendatory act is not to be construed to change the original act or section further than expressly declared or necessarily implied." 1A Sutherland, *Statutory Construction* §22.30 at 179 (4th ed., Sands, 1972).

The 1971 amendments to sec. 111.70, Stats., did not expressly nullify this court's previous decision that exclusionary checkoff was not permissible. Nor can it be said that the amendments necessarily imply nullification. Although, as respondents stress, both fair-share agreements and exclusionary checkoff privileges are union security devices, they differ, as previously noted, in function and effect. The legislative decision to permit the certified union to recoup some of its bargaining costs from non-union bargaining unit employees is perfectly compatible with this court's holding that one union may not arrange a checkoff system to the exclusion of other unions. The first negates the possibility that there will be freeloaders who reap the benefits of collective bargain-

ing without paying the cost; the latter tends to destroy competing unions or at least discourages membership in them. The legislature could very well permit the one without permitting the other.

In this respect, it is significant that the legislature failed to adopt an amendment to Assembly Bill 198 (1971) which would have substituted for those sections of the bill authorizing fair-share agreements a provision authorizing a municipal employer and a labor organization to enter into a "maintenance of membership agreement." As defined in the proposed bill amendment, such an agreement would have apparently required those who were or became members of the representative organization to maintain, as a condition of their employment, their membership for the duration of the agreement. The legislature's rejection of a bill amendment which would have restricted an employee's right to freely associate with one of possibly several labor unions is supportive of our conclusion that the legislature did not intend to implicitly grant a majority union the right to negotiate an exclusive checkoff agreement.

Finally, we do not agree that a prohibited practice is committed under the amended statute when a municipal employer arranges to deduct union dues from the paycheck of a minority union member. Although sec. 111.70 (3) (a) 6, Stats., utilizes the phrase "representative organization" in explaining the conditions under which an employer may properly deduct union dues from the paycheck of an employee, this does not limit the applicability of the provision to certified majority unions. If the legislature had intended the provision to be so limited, it could have used the phrase, the "representative of a majority of its employees in [the] . . . appropriate collective bargaining unit," as it did in sec. 111.70 (3) (a) 4, or the phrase, "the exclusive representative of all em-

ployees in the unit for the purpose of collective bargaining," as it did in sec. 111.70(4)(d). Indeed, sec. 111.70 (3)(a)6 permits an employer to deduct union dues when so authorized by the employee, not a labor organization. Thus, the provision is consistent with our decision in *Board of School Directors v. WERC, supra* at 649–50, where we stated that although the majority has the right to negotiate for a checkoff, the right is negotiated for all employees who collectively may or may not decide to exercise the right.

We conclude that this court's holding *Board of School Directors v. WERC, supra* is not nullified by legislative amendment, that it is applicable to this case, and that it requires a reversal of the circuit court's order affirming the decision and orders of the Commission.

In view of the above ruling, it is not necessary to reach the remaining issue involving the constitutionality of exclusionary checkoff.

*By the Court.*—Order reversed.