Arthur WELLS, Administrator of Local 2491,
American Federation of State, County and
Municipal Employees, AFL-CIO; and Robert
Lyons, Deputy Administrator of Local 2491,
American Federation of State, County and
Municipal Employees, AFL-CIO both in their
official capacities, Plaintiffs-Respondents and
Cross-Appellants,†
v.

WAUKESHA COUNTY MARINE BANK,
Defendant,

Judith VANNUCCHI, Patricia Schmidt,
Jacqueline Johnson, Kathleen Dentici, Joyce
Slater, Barbara Randa, Monica Matteson and Judy
Fargo, Defendants-Appellants and Cross-
Respondents.

Court of Appeals

*No. 85–1532. Argued October 2, 1986.—Decided December 23, 1986.*

(Also reported in 401 N.W.2d 18.)

† Petition to review denied.

For the defendants-appellants and cross-respondents, the cause was submitted on the briefs of *Robert H. Friebert, William S. Roush, Jr.,* and *Cordelia S. Munroe* of *Friebert, Finerty & St. Johns, S.C.,* of Milwaukee. Oral argument by *Robert H. Friebert.*

For the plaintiff-respondents and cross-appellants, the cause was submitted on the briefs of *Richard V. Graylow* of *Lawton & Cates, S.C.,* of Madison. Oral arguments by *Richard V. Graylow.*

Before Scott, C.J., Brown, P.J., and Moser, J.

BROWN, P.J. The major issue on appeal is whether a provision of the International Constitution of the American Federation of State, County and Municipal Employees (AFSCME), requiring forfeiture of a local union's treasury upon the employees' election of a different bargaining representative, is enforceable.[1] We

---

[1] Plaintiffs actually initiated these proceedings seeking the Local's books, records and funds pursuant to the terms of an administratorship imposed under the AFSCME International Constitu-

conclude that it is not because, as applied, the provision violates Wisconsin public policy. Therefore, we reverse that part of the circuit court's judgment which ordered such forfeiture. We also reverse the portion of the judgment awarding nominal and punitive damages to the officers of the Local on their counterclaim for abuse of process.

This suit was initiated by Arthur Wells and Robert Lyons in their capacities as administrator and deputy administrator, respectively, of AFSCME Local 2491. Arthur Wells was International Union Director for AFSCME; he has since retired. Robert Lyons was, and is, Executive Director for AFSCME District Council 40, an intermediate level organization within the AFSCME governing structure.

The individual defendants were, at the times relevant to the action, elected officers, executive board members or employees of AFSCME Local 2491. Local 2491 was made up of municipal employees at Waukesha County Technical Institute (WCTI) and had been in existence since 1971. Judith Vannucchi was president of the Local. Kathleen Dentici was treasurer. Patricia Schmidt was vice-president and Jacqueline Johnson was secretary. Joyce Slater, Barbara Randa, Monica Matteson and Judy Fargo were all either members of the Local's executive board or otherwise officially employed

---

tion, rather than strictly pursuant to the separate forfeiture clause. However, because the Local has long since disaffiliated from AFSCME but the plaintiffs have not relinquished any claim to the Local's property, and because the circuit court addressed the significance of the forfeiture clause as well as the administratorship, the enforceability of the forfeiture clause is properly before us on this appeal.

by the Local. These defendants will be collectively referred to as the Local officers.

The following facts were found by the trial court or are otherwise undisputed. In 1981, members of Local 2491 became dissatisfied with the quality of representation they were receiving from AFSCME and District Council 40. On December 15, 1981, Local 2491 executive board members met with a representative of a competing union, the Wisconsin Education Association Council (WEAC). The WEAC representative left authorization cards to be circulated among the employees to determine whether there was sufficient interest to hold a representative election pursuant to sec. 111.70, Stats. Between December 16 and December 18, 1981, approximately 70% of the Local's members indicated their interest in seeking a different bargaining representative by signing the cards, which were returned to WEAC. As a result, WEAC filed a petition with the Wisconsin Employment Relations Commission to hold a representative election.

Robert Lyons discovered that the authorization cards were being circulated and wrote a letter to the Local's membership, urging them not to sign the cards. Lyons also called a meeting with members of the Local's executive board on December 21, 1981.

At the meeting, Lyons was severely critical of the actions of the Local officers and threatened confiscation of the Local's treasury if the authorization cards were not retrieved. Lyons shouted, pounded on the table, and pointed his finger. He threatened that any attempt to divide the treasury among the members or to transfer it to WEAC would be met with embezzlement charges.

In further communications from Lyons, Wells and the AFSCME International President, the Local was

warned that it would be placed under administratorship if it did not stop its efforts to have a competing union represent it in its relations with WCTI. The Local officers were also informed that the terms of the International Constitution required a forfeiture of the Local's treasury if AFSCME were defeated in the election.

In early January 1982, the International President placed Local 2491 under administratorship[2] and ordered the Local officers to turn over to Wells and Lyons all funds, properties, books and other assets of the Local.[3] Lyons then contacted Local treasurer Kathleen Dentici to ask that she turn over the books and treasury to him. Dentici agreed at first, but after consulting her fellow officers informed Lyons she had changed her mind. Dentici later testified that she and the other officers felt that by holding on to the treasury and books they were properly representing the Local membership.

---

[2] The administratorship was imposed pursuant to article IX, section 30 of the AFSCME International Constitution, which states in pertinent part:

> If the International President shall find that (1) a subordinate body has seceded or purported to secede, or (2) that dissolution or secession of a subordinate body is threatened, or (3) that dissipation or loss of the funds or assets of a subordinate body is threatened, ... or (5) that a subordinate body is acting in violation of this Constitution ... so that in the opinion of the International President an emergency situation exists, the International President is empowered to place such subordinate body under administratorship pending notice and hearing.

[3] Article IX, section 38 of the International Constitution in part provides:

> Such administrator shall have the right, upon demand, to take possession of all the funds, properties, books and other assets of such subordinate body for the period that the administrator is in charge, such assets to be held in trust for such subordinate body . . . .

Lyons and Wells commenced this action, seeking a turnover order pursuant to the administratorship provisions of the International Constitution.[4] The Local officers raised several affirmative defenses and counterclaimed for conspiracy to convert money and conspiracy to abuse process. One of the defenses asserted was that the administratorship was unenforceable because its use in this case violated Wisconsin public policy as enunciated in sec. 111.70, Stats.

After a trial to the court, the circuit court rejected the Local officers' public policy argument and found the International Constitution enforceable as a matter of contract. In doing so, the court addressed both the administratorship and the forfeiture clause, reasoning that since the Local had associated with a new bargaining agent:

> [t]he only matter to be determined is where the money accumulated during the Local's active association with the Council and the International should now go.

> Since the court finds the matter is contractually determined, it will not discuss the equities. Suffice that the Local knew or should have known when it was collecting the dues that any disaffiliation or threatened disaffiliation for whatever reason could

---

[4] Article IX, section 38 of the International Constitution provides that "[t]he administrator shall institute all necessary action to recover money or other property of the subordinate body." In addition to naming the individual Local officers as defendants, the plaintiffs joined Waukesha County Marine Bank, where the Local maintained its checking and savings accounts, as a defendant. The bank did not defend the suit, but indicated that it would be bound by the court's decision regarding the rightful ownership of the funds held by the bank.

result in a forfeiture of the dollars held in its treasury to the International.

The court ordered the Local to turn over its books, records and property to the administrators, ordered Waukesha County Marine Bank to deliver to the administrators the funds held on deposit for Local 2491, and terminated the Local's interest in funds being held in escrow by WCTI for the benefit of the Local.

However, while dismissing the Local officers' counterclaim for conspiracy to convert money, the court found for the Local officers on their counterclaim for abuse of process, as amended to conform to the proof. Wells and Lyons were ordered to pay nominal and punitive damages totaling $4,800 to the individual Local officers.

The Local officers appeal on the public policy issue and the administrators cross-appeal on the abuse of process issue.

## FORFEITURE CLAUSE

Preliminarily, we reiterate that the Local officers' appeal centers on the forfeiture clause rather than on the administratorship provisions. The enforceability of the administratorship was not even raised as an appellate issue by the Local officers. For the purposes of this appeal, we therefore assume without deciding that the International could, under the facts of this case, reasonably impose an administratorship over the Local and pursuant to that administratorship could require the Local to turn over its books, records and funds to be managed by the administrators for the duration of the administratorship. The real issue remaining, as the trial court made clear, is whether, since the Local has long

since disaffiliated from AFSCME, the Local is to permanently surrender its treasury to the International.

The forfeiture clause is contained in article IX, section 29 of the AFSCME International Constitution. The provision reads:

> The funds or property of a subordinate body, whether chartered or not, shall not be divided among the members, but shall remain intact for the use of such subordinate body for its legitimate purposes while such subordinate body exists. When any such subordinate body secedes or discontinues its affiliation, all monies, books, collective bargaining agreements and any other memoranda of understanding or other agreements concerning wages, hours, or terms and conditions of employment of members of such subordinate body and other properties shall be transmitted to the International Secretary-Treasurer and assigned to the International Union to be held in trust for the purpose of reorganization. If such subordinate body is not reorganized within a period of two years following the transmission of its assets to the International Secretary-Treasurer, then such assets shall revert to the International Union. No property of any subordinate body and no property in the possession, custody or control of any such subordinate body or any of its officers or employees, and no property held in trust, express or implied, which was created or established by any such subordinate body and whose primary purpose is to provide benefits for the members of such subordinate body or their beneficiaries, shall be given, contributed, assigned, donated or result to, or be given to the control of, either directly or indirectly, any seceding, dual or antagonistic labor organization or group nor to any subordinate body which is in violation of the International Constitution but any such property

shall remain in the custody or control of the subordinate body as indicated above, regardless of whether a majority of the membership may have seceded or disaffiliated.

The administrators have consistently argued that the enforceability of this provision is a straightforward matter of contract between the International and the Local.

It is true that a union's constitution and bylaws govern its management and affairs and constitute a contract between the union and its members. *Attoe v. Madison Professional Policemen's Ass'n*, 79 Wis. 2d 199, 206, 255 N.W.2d 489, 492 (1977). The courts are reluctant to interfere in the internal affairs of such organizations and any reasonable or permissible construction which an order gives to its own constitution, laws or rules will govern unless clearly subversive of personal or property rights. *Id.* at 206, 255 N.W.2d at 492–93.

The Local officers claim that the personal rights of the Local members are precisely the issue here. Their argument is grounded in the language of sec. 111.70(2), Stats., which guarantees municipal employees, among other rights, the right to choose their own bargaining representatives and to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid or protection.[5]

---

[5] Section 111.70(2), Stats., reads in pertinent part:

RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, and such employes shall have the right to refrain from any and all such activities . . . .

The Local officers also cite sec. 111.70(3)(c), Stats. That subsection makes it a prohibited practice for any person, including a labor organization, *see* sec. 111.70(1)(k), to do or cause to be done "on behalf of or in the interest of municipal employers or municipal employees, or in connection with or to influence the outcome of any controversy as to employment relations, any act prohibited by par. (a) or (b)." Section 111.70(3)(a) prohibits a municipal employer, individually or in concert with others, from interfering with, restraining or coercing municipal employees in the exercise of their sec. 111.70(2) rights. Section 111.70(3)(b) prohibits a municipal employee, individually or in concert with others, from coercing or intimidating another municipal employee in the enjoyment of his or her sec. 111.70(2) rights.

Thus, it is a prohibited practice for a labor organization, individually or with others, to restrain, coerce, intimidate or interfere with municipal employees in the exercise or enjoyment of their sec. 111.70(2), Stats., rights, on behalf of or in the interest of municipal employees or employers or in connection with or to influence the outcome of any controversy as to employment relations.

██ The terms "employment relations" and "controversy as to employment relations" are not defined in the Municipal Employment Relations Act, sec. 111.70 to 111.77, Stats., nor elsewhere in ch. 111, Stats. Nor does there appear to be a standard accepted definition of the term "employment relations," as evidenced by the fact that neither Black's Law Dictionary nor Webster's Third New International Dictionary defines the term. The legislature evidently chose not to limit the defini-

tion of "employment relations" to the narrower scope of the term "labor dispute," which it defines in sec. 111.70(1)(g) as:

> any controversy concerning wages, hours and conditions of employment, or concerning the representation of persons in negotiating, maintaining, changing or seeking to arrange wages, hours and conditions of employment.

Since ch. 111 is entitled "Employment Relations," but the term is not otherwise defined, a "controversy as to employment relations" is reasonably construed as a controversy as to some portion of the subject matter of ch. 111, including the free election of a new bargaining representative by municipal employees. We conclude that if a labor organization interferes with, restrains, coerces or intimidates municipal employees in the exercise of their sec. 111.70(2) rights in connection with or to influence the outcome of a representative election, such action constitutes a prohibited practice under sec. 111.70(3)(c).

The Local officers argue that the only purpose of the forfeiture clause is to discourage and punish disaffiliation from AFSCME and that the clause was used as part of a systematic effort by Lyons and Wells to harass and intimidate Local 2491 members to prevent them from exercising their statutory right to seek a representative election and choose a new bargaining representative. The Local officers contend that such purpose and application violate Wisconsin public policy as expressed in sec. 111.70(2) and (3), Stats., and therefore the circuit court should have refused to grant specific, equitable enforcement of the forfeiture clause. *See Griffith v. Harris,* 17 Wis. 2d 255, 259, 116 N.W.2d 133, 136 (1962), *cert. denied,* 373 U.S. 927 (1963).

We agree. At trial, when questioned by the court about the purpose of the forfeiture clause, Robert Lyons stated, "I think that is a fairly common provision in a number of union constitutions and it is I think quite obviously a disincentive for local unions to disaffiliate."

On appeal, the administrators characterize the forfeiture provision and the administratorship as anti-raid provisions, designed "to assure that the benefits, the funds, the books and records of a Local which has received the services and benefits of membership in the Council and International under the constitution do not pass to a competitor or simply to the members of the Local to the detriment of the Council or the International" (quoting the trial court's memorandum decision).

However, it is undisputed that absent an attempt at disaffiliation by the Local neither AFSCME nor District Council 40 had any claim whatsoever on the treasury of the Local. That treasury was accumulated over the years from dues imposed by the Local upon its own members. The dues, or "per capita taxes," owed each month to District Council 40 and the International were separately calculated and paid by the Local treasurer to those respective organizations. At the time the administratorship was imposed, the trial court found, Local 2491 was completely current on those payments. The treasury was a purely Local matter intended for such purposes as to fund a bowling team, provide a "sunshine" fund for sick members and cover Local arbitration expenses. Lyons conceded at trial that AFSCME did not claim that any debts were owed to it by the Local and that the only claim to the Local's treasury was pursuant to the administratorship and forfeiture provisions of the Constitution.

Since no claim to the Local treasury existed here apart from the forfeiture clause, we fail to see how "detriment [to] the Council or the International" results if the Local members take their treasury with them to their new affiliation. The "detriment" to the Council and the International is the loss of the Local, not the loss of the Local's treasury. *No other justification for the forfeiture provision has been offered by the administrators.*

We conclude that the public policy of Wisconsin does not allow the enforcement of this contract provision, as applied to require the forfeiture of a local union's property to the international union, *which has no other claim to that property,* upon the local members' exercise of their statutory right to discontinue affiliation with the international.

Our supreme court has held that a municipal employer's cooperation with union practices whose sole purpose is union security and self-entrenchment, or which tend to destroy or at least discourage membership in competing unions, is a prohibited practice under sec. 111.70(3)(a), Stats. *See Milwaukee Fed'n of Teachers, Local No. 252 v. WERC,* 83 Wis. 2d 588, 266 N.W.2d 314 (1978); *Board of School Directors v. WERC,* 42 Wis. 2d 637, 649-50 & n. 4, 168 N.W.2d 92, 98 (1969). The supreme court has not addressed what union practices are prohibited under sec. 111.70(3)(c). However, that subsection states that acts prohibited under sec. 111.70(3)(a) and (b) if performed by employers or employees are prohibited under subsec. (c) if performed by any person on behalf of or in the interest of municipal employers or employees, or in connection with or to

influence the outcome of any controversy as to employment relations.

Pursuant to our analysis, above, of the meaning of the subsec. (c) prohibition, we conclude that AFSCME's use of the forfeiture clause as a disincentive for municipal employees to exercise their statutory right to disaffiliate from AFSCME is contrary to the clear policy of this state.[6]

---

[6] In construing the analogous federal statute, sec. 8(b)(1) of the National Labor Relations Act, 29 U.S.C. sec. 158(b)(1) (1982), the United States Supreme Court has held that, while Congress did not intend to limit the internal affairs of unions aside from barring enforcement of a union's internal regulations to affect a member's employment status,

> if the rule invades or frustrates an overriding policy of the labor laws the rule may not be enforced, even by fine or expulsion, without violating sec. 8(b)(1). . . . [S]ec. 8(b)(1) leaves a union free to enforce a properly adopted rule which reflects a legitimate union interest, impairs no policy Congress has imbedded in the labor laws, and is reasonably enforced against union members *who are free to leave the union and escape the rule.*

*Scofield v. NLRB*, 394 U.S. 423, 429, 430 (1969) (emphasis added). More recently, while again stressing unions' right to control internal affairs, the Supreme Court relied in part on *Scofield* in ruling that a union rule, enforced by a fine, prohibiting resignation from the union during a strike " 'restrains or coerces' employees, see sec. 8(b)(1)(A), and is inconsistent with the congressional policy of voluntary unionism." *Pattern Makers' League v. NLRB*, 473 U.S. 95, —,—, 105 S. Ct. 3064, 3069-70, 3075 (1985).

Concededly, the federal statute differs from sec. 111.70, Stats., both in its explicit, broad provision that labor organizations may not restrain or coerce employees in the exercise of their rights and in its proviso that nothing in that provision shall impair the right of a union to prescribe its own rules with respect to acquisition or retention of union membership. Both statutes, however, share the fundamental policy of "voluntary unionism." If a union may not, under the

The trial court based its conclusion that the forfeiture provision was enforceable on the fact that the Local 2491 membership was not, ultimately, deterred from exercising its right to choose a new bargaining representative; an election was in fact held, and AFSCME was replaced by WEAC. However, "[i]f the mere tendency or purpose of a contract works against public policy, it is illegal," even though no actual damage results. *Associated Wis. Contractors v. Lathers*, 235 Wis. 14, 17, 291 N.W. 770, 771 (1940). The fact that the Local disaffiliated despite the threat of forfeiture does not save the forfeiture provision.

We are mindful that contracts should be held unenforceable on public policy grounds only in cases free from doubt. *Continental Ins. Co. v. Daily Express, Inc.*, 68 Wis. 2d 581, 589, 229 N.W.2d 617, 621 (1975). Because the purpose and use of the forfeiture provision are contrary to the clear policy expressed in sec. 111.70(2) and (3)(c), Stats., we are convinced that this is such a case.

Finally, the administrators raise what they characterize as an "exhaustion of administrative remedies" objection to the Local officers' public policy defense. This argument centers around the fact that none of the Local officers appeared at an AFSCME International Judicial Panel hearing, held on January 18, 1982, concerning the legality and continuing necessity, if any, of the administratorship imposed on Local 2491. Nor was

---

federal statute, enforce its rule preventing members from resigning during a strike, a time when the union's interest in maintaining its strength is extremely strong, it is difficult to understand how a union can require the forfeiture of an entire treasury when local members vote to disaffiliate without violating the same policy.

any appeal taken from the decision of the judicial panel hearing officer upholding the administratorship.

The trial court found that the Local officers did not attend the judicial panel hearing because they believed their attendance would be futile. Each had already been served with the summons and complaint which commenced this lawsuit.

The administrators cite no authority, and our independent research has disclosed none, for their claim that the Local officers may not *defend* this lawsuit, initiated even before the internal "administrative" hearing took place, because they did not participate in that hearing. Exhaustion of internal or administrative remedies is a doctrine applied to those initiating judicial proceedings. Here, the administrators, not the Local officers, initiated judicial proceedings.

Moreover, the exhaustion doctrine contemplates a situation where some administrative or internal action has begun but has not been completed. *Nodell Inv. Corp. v. City of Glendale*, 78 Wis. 2d 416, 427 n. 13, 254 N.W.2d 310, 316 (1977). Here, the judicial panel hearing took place. No other internal proceeding is pending or was pending when this action was before the circuit court. The exhaustion doctrine is inapplicable.

The portion of the judgment requiring the Local funds, books and records to be surrendered to the administrators is reversed. The circuit court is directed to enter judgment in favor of the appellants, directing that the moneys in the Local's bank account and the moneys being held in escrow for the Local by WCTI be transferred to the appellants as trustees for the benefit of the local bargaining unit.

535

## ABUSE OF PROCESS

We turn now to the issue raised by the administrators' cross-appeal—whether the trial court erred in finding that Lyons and Wells abused process when they allegedly caused copies of the decision of the judicial panel hearing examiner to be served on the Local officers by the Waukesha and Jefferson county sheriffs in connection with this lawsuit.

Abuse of process has two essential elements. These are (1) a willful act in the use of the process not proper in the regular conduct of the proceeding, and (2) an ulterior motive. *Thompson v. Beecham*, 72 Wis. 2d 356, 362, 241 N.W.2d 163, 166 (1976).

The trial court found that the judicial panel decision was not "process" and that no explanation of why it was served had been offered by Lyons and Wells. The court concluded, "Surely, this was a wilful act with a document which was not process and unnecessary in the conduct of these proceedings." The court further found an ulterior motive: "The court is satisfied the service of the judicial panel decision on defendants had no other purpose but to harass defendants with the hope that they would comply with the demands of plaintiffs to turn over funds still held by defendants in defiance of the terms of the administratorship."

The administrators argue that precisely because the judicial panel decision was not "process," no abuse of process could be found. We conclude that this is a correct interpretation of the law. In its broadest sense, the term "process" comprehends all the acts *of the court* from the beginning of a proceeding to its end; in its

narrower sense, it is the means of compelling the defendant to appear in court after the suing out of the original writ in a civil case and after indictment in a criminal case. *State ex rel. Walling v. Sullivan*, 245 Wis. 180, 189, 13 N.W.2d 550, 555 (1944). "Writ" and "process" are interchangeable terms. *Id.*

Even the broadest conceptions of "process," involving the entire range of procedures incident to litigation, have involved the use of procedures which require that the person to whom they are directed perform or refrain from performing some prescribed act. *See, e.g., Younger v. Solomon*, 38 Cal. App. 3d 289, 296–97, 113 Cal. Rptr. 113, 117–18 (Cal. Ct. App. 1974) (use of written interrogatories, authorized by statute and enforceable by sanction, constituted use of "process"), and cases discussed therein. Dean Prosser describes the tort as "a form of extortion," accomplished "by the use of the process as a threat or a club." W. Prosser, *Handbook of the Law of Torts* sec. 121 at 857 (4th ed. 1971). It is because process has a coercive effect on the recipient that the "extortion" is made possible, and the heart of the tort lies in what is done in the course of negotiation, rather than the issuance or any formal use of the process itself. *See id.*

The documents served on the Local officers in the present case were simply copies of the AFSCME judicial panel decision. They were not documents issued by a court; they did not purport to exercise jurisdiction over the recipients or their property or command appearance, action or inaction under pain of judicial sanction or other penalty. Even if these documents were caused to be served purely to harass the recipients, they did not constitute process because they did not involve the

power of the court. The fact that a paper is served by a sheriff does not convert it into process.[7]

As noted above, the trial court here recognized that the judicial panel decision was not "process." In fact, that very finding was the basis for the court's conclusion that process had been abused. Such a conclusion involves a contradiction in terms. Abuse of process involves the use of legal process primarily for a purpose for which it is not designed. Absent use of process, no abuse of process can be found. We therefore reverse the portion of the judgment awarding the Local officers nominal and punitive damages on the abuse of process issue. Because we do so, we need not address the administrators' remaining arguments.

No costs to either party.

*By the Court.*—Judgment reversed and cause remanded with directions.

MOSER, J. (*dissenting in part, concurring in part*). I respectfully dissent in part from the majority's opinion. They have swallowed a totally illogical argument leading to a preposterous result. They hold that a union anti-raid contract provision requiring a disaffiliating local to tender its monies and property to the AFSCME international union is void as against public policy. The majority claims the public policy violated by this contractual provision is found in the prohibited practices part of the Municipal Employment Relations Act (MERA), namely sec. 111.70(3)(a), (b) and (c), Stats.

The majority completely misreads the prohibited practice section of MERA. The proscribed practices

---

[7] Indeed, in many instances, service may be an appropriate method of assuring actual receipt of a notice or other document.

under that statutory scheme are governmental actions of any kind to prevent municipal employees from the formation of or continuum of union collective bargaining measures. I submit nothing the respondents did was accomplished on behalf of Waukesha County Technical Institute in any anti-union activity or to influence the outcome of any controversy as to employment relations, by any act prohibited by paragraphs (a) and (b) of sec. 111.70(3), Stats.

What the majority has done in being led into misreading the above statute is to destroy an otherwise proper intra-union, anti-raid contractual provision.

I would affirm that part of the trial court's judgment upholding the anti-raid provisions, but I agree with that part of the majority's decision holding that there was no abuse of process by AFSCME officials and therefore would reverse the trial court's decision in that respect.